## Carstensen's Estate.

*Wills—Vested and contingent estates.*

A legacy will be regarded as vested rather than contingent unless the language of the will indicates that the testator had a different intention.

The testatrix devised and bequeathed her entire estate to her executor in trust to convert the same into money and pay the interest and income thereof to her husband during his life.   The will then provides as follows : " And from and after the decease of my said husband, I give, devise and bequeath the whole estate then remaining to my brothers and sisters ; the child or children of any of my said brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living." *Held*, that the interest of the brothers and sisters was not contingent upon their surviving the life tenant, but that it vested at the death of the testatrix, subject to be defeated only by the legatee leaving children during the life tenancy of the first taker.

MITCHELL, J., dissents.

Argued March 6, 1900.   Appeal, No. 78, Jan. T., 1900, by Elizabeth Anna Christie, from decree of O. C. Franklin Co., overruling exceptions to auditor's report, in the estate of Marion Carstensen, deceased.   Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MESTREZAT, JJ.   Affirmed.

| 196 | 325 |
| 201 | 427 |

| 196 | 325 |
| 21 SC | 247 |

| 196 | 325 |
| d208 | ²502 |
| 24 SC | ²249 |

| 196 | 325 |
| 39SC 330 | |

Exceptions to report of Irvin C. Elder, Esq., auditor.

The facts appear by the opinion of JOHN STEWART, P. J., which was as follows :

The testatrix, Mrs. Marion Carstensen, gave her entire estate in trust, directed its conversion, and gave the income therefrom to her husband during his life. The residuary estate she disposed of as follows : " And from and after the decease of my said husband, I give, devise and bequeath the whole estate then remaining to my brothers and sisters. The child or children of any of my said brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living."

The testatrix died November 18, 1875 ; six brothers and sisters survived her. Her husband died September 5, 1898. The residuary estate, embraced in two separate accounts, one of the administrator c. t. a. and one of the trustee, is now for distribution.

Of testatrix's brothers and sisters, only two survived the death of her husband. Thomas Denton Johns, one of the brothers, died in 1883, leaving to survive him two daughters, still living and of full age. William Maurice Johns, another brother, died in 1877, leaving one child, Willie M. Johns, who died September 6, 1889, at the age of twelve years. Samuel Dunn Johns, another brother, died in 1878, unmarried and without issue. A sister, Mrs. Kate Johns Davis, died in 1891, leaving three children who survive her, all of full age.

The auditor to whom the accounts were referred for distribution has awarded an equal one sixth of the estate, to the legal representative of Willie M. Johns, who was a child of William Maurice Johns, and died without issue, during the continuance of the husband's life estate ; and a like share, to the representative of Samuel Dunn Johns, who also died before the husband, and without issue.

To this distribution the other distributees except. Their contention is that under the terms of the bequest, as above stated, the gift was to the brothers and sisters as a class, and that those only who were living at the termination of the particular estate given to the husband, and the then surviving issue of those dead are entitled to take ; in other words, that

the gift was a contingent one, and vested only upon the death of the husband. This would give the entire residuary estate to the exceptants in four equal shares. The argument in support of this view has been pressed with great vigor, and with no less skill. We have given it attentive consideration without, however, being convinced by it. It would not be profitable labor in this connection, to distinguish between the case in hand, and the cases cited by the counsel for exceptants, in support of his contention. Their number forbids any such attempt, and besides they are for the greater part derived from English reports. The conflict between the latter and our own authorities, if it exists, only shows that the law is not the same in both countries.

The application of the familiar principle, that legacies payable at a future time certain to arrive, and not subject to condition precedent, are deemed vested, when there is a person in esse at the time of the testator's death, capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death, is resisted in this case, because it is contended, we have here a condition precedent, limiting the gift to those of the brothers and sisters who might survive the termination of the life estate of the husband, and making the right to take contingent upon such survivorship. The argument in support of this view rests wholly upon the fact that the gift is to the brothers and sisters as a class, reinforced, as it is claimed, by the further circumstance, that the clause of the will next following the gift, provides that the child or children of any of the brothers or sisters " who may then be dead," shall take and receive the share that his or their parent would have taken if living. It is insisted that the period here fixed is annexed to the gift itself, and not merely to its payment; that the individuals entitled to take under this bequest could not be ascertained until after the determination of the life estate, and that the occurrence of such an uncertain event, as the survival of any particular brother or sister, or child of brother or sister, deceased, being required, has the effect to make the remainder contingent.

Clearly, the mere fact that the bequest is to a class, does not operate to postpone its vesting, notwithstanding it be uncertain which, if any, of the constituents of the class shall survive to enjoy it. In such case, where the period of enjoy-

ment is postponed, the legacy vests at once upon the death of
the testator, in those objects to whom the description then
applies.    This is elementary and we have many cases in our
own reports illustrating the rule.    It is sufficient to mention
King v. King, 1 W. & S. 205, Chew's Appeal, 37 Pa. 28, and
Ross v. Drake, 37 Pa. 376.    This rule may be found stated at
length and discussed in 2 Jarman on Wills, p. 704.

But, it is argued, that the bequest to a class, when consid-
ered in connection with the subsequent clause which gives to
the child or children of any of the class who may then be dead,
that is, dead when the period of enjoyment arrives, postpones
the vesting, because the effect of the whole bequest is to make
the time appointed for the enjoyment a constituent part of
the description or character of the objects of the gift; just as
though it read—to my brothers and sisters who may he living
at the death of my husband, and the children then living of
any of my brothers or sisters then dead.

The construction here suggested is ingenious, and it is pos-
sible that it correctly expresses the intention of the testator.
But this is far from sufficient; before it can avail to postpone
the vesting of this legacy, it must appear plainly, manifestly
and indisputably to be the construction the testator intended;
not resulting from the application of artificial rules, but the
unmistakable meaning derived from the language used.    Such
was the test applied in King v. King, 1 W. & S. 206.

Unfortunately for the exceptant's contention, the very cir-
cumstances which they claim makes their construction the true
expression of testatrix's intention, is regarded by all the au-
thorities as indicative of an opposite intent.    The circumstance
of a limitation over in case of the death of a legatee, whether
single or one of a class, before the time appointed for the enjoy-
ment, is held to be explanatory of the sense in which the testa-
tor intended the legatee's interest in the fund to depend, on
his surviving the period of distribution, namely that at that
period it should become absolute and indefeasible, and always
in such case it vests immediately.    This rule may be found in
2 Jarman on Wills, p. 425, and in the note, a citation of many
American cases in which it has been applied.    The authorities
in our own state which recognizes this principle are not few.

In Manderson v. Lukens, 23 Pa. 32, the devise was to the

wife during life or widowhood, and "whenever her death or marriage should take place," it was to be equally divided among testator's children "which may then be alive, or who may have left legitimate heirs." Two of the children died intestate, without issue. In deciding the case, LOWRIE, J., says, "We cannot treat the expression 'legitimate heirs' as meaning 'issue' in the technical sense; for we are sure that the testator had no thought of creating an estate tail. Nor can we substitute the word 'children' in the English sense, which is never equivalent to 'heirs' if by so doing we should give to the first takers only a life estate, with an executory devise to their unborn children; for nothing was further from the intention of the testator than such an artificial devise as this. Besides, the rule that no limitation will be deemed an executory devise if it can be treated as a remainder, is too peremptory and too valuable to allow this. We cannot allow the word 'whenever,' referring to the time when the property is to be divided, to make the devise to children contingent; for that word, or its synonyms, almost always appear where a vested remainder is created: Kerlin v. Bull, 1 Dall. 175; Frame v. Stewart, 5 Watts, 435. Moreover, the rule that an estate will not be construed as contingent if it is at all practicable to construe it as vested, is quite as valuable and inflexible as the one just cited.

"The question of vested or contingent is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. Neither does it depend upon the defeasibility or indefeasibility of the right of possession; for many estates are vested without possession, as well as with, which are yet defeasible. If there is a present right to a future possession though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate. An unpossessed estate is vested, if it is certain to take effect in possession, by enduring longer than the precedent estate. Any additional contingency destroys its vested character; but in this case there is no other.

"The title having become vested immediately on the death of the testator, we cannot construe the words 'who shall have left legitimate heirs' so as to divest it; for the rule that, in

doubtful cases, requires an estate to be construed, if possible, as absolute rather than 'defeasible, is quite as important as any that we have cited. Besides this, it is plain that the very object of the clause was to prevent the estate of the devisees from being defeated by their death during the precedent estate. What then becomes of the shares of the two who died first? The clause intending to provide for this is absurd in its literal sense, because it gives the land to them, even though they should be dead. The testator did not mean this, but something that is reasonable. It is manifest that he was thinking that some of his children might die before his wife, and that, if they should have children, these children ought not to be excluded by the will, and he unnecessarily inserts a clause expressive of this thought. When the two children died without issue, their brother Peter inherited their shares."

This case serves a much wider purpose than merely to illustrate the fact that the courts accept a limitation over as indicative of an intent that the legacy shall vest; it defines in a most unmistakable way the distinction between vested and contingent legacies ; it reaffirms the rule that the word "whenever" and its synonyms, referring to the time when the property is to be divided, does not make the gift contingent; also, the other rule ; that an estate will not be construed to be contingent, if it is at all practicable to construe it as vested ; and, further, it bears so directly upon the case in hand, that with its aid alone, every question suggested by the former may be easily and readily resolved.

In McGill's Appeal, 61 Pa. 50, the same doctrine is recognized and applied. So in McCall's Appeal, 86 Pa. 257. In this last mentioned case, the report of the auditor is given in full, and adopted by the court. We quote from it : " Where the devise is to a person when or if he shall live to attain a certain age or at a certain age, this standing alone would be contingent ; yet if it be followed by a limitation over if he shall die before a certain age, this is regarded as explanatory of the nature of the estate, which it was intended the devisee should take upon arriving at the age named, i. e., that it should then become absolute and indefeasible. The interest, therefore, in such cases, is held to vest upon the decease of the testator. Where the devise over is made dependent upon the first devisee

dying before he comes of age, or without issue, or any similar event, it is considered that the devise is equivalent to a provision that the first donor shall take an immediate vested interest, liable to be defeated by the happening of the contingency named; or if it do not happen, the estate then to become absolute and indefeasible."

These authorities leave it beyond question that, primarily, a limitation over in the event of a legatee dying before the period of distribution, without more, denotes an intention that the gift shall immediately vest. Again, the bequest here to the brothers and sisters is unqualified and immediate. The effect of the subsequent clause is doubtless to divest the interest of any who died during the continuance of the prior estate leaving children. So much was intended; but it stops there. A gift intended to divest a previous vested interest is to be strictly construed, and an estate once vested will not be divested; unless all the events which are to precede the vesting of a substituted devise happen. And this applies as well in regard to events which respect the personal qualifications of the substituted devisee, as those which are collateral to him. In every case the original devise remains in force, until the substituted devise is complete. Thus, if a devise is made to A. to be divested on a given event in favor of persons unborn or unascertained, it will not be affected by the happening of the event described, unless also the object of the substituted gift come in esse and answer the qualifications which the testator has annexed thereto: 2 Jarman on Wills, p. 442. The author cites, in support of this principle, the case of Strother v. Dutton, 1 De G. & J. 675, where the testator gave to his daughter R. 1,000 pounds to be invested and the interest paid to her for life, and at her death to be called in and distributed equally among her children: "In case any lawful children are living from son or daughter, being dead, the issue of their marriage, that such child or children shall be equally entitled to the part or share their parent would be entitled to if they had been living." R. had several children, of whom four died in her lifetime without issue; and it was held that the shares which vested in them on their births were not divested; for the gift in favor of the issue of the children who had issue, did not affect the shares of the children who died without leaving issue.

The logic of this applies equally to the two shares contested in this case, that of William Maurice Johns, who died during the prior estate, leaving one child, who also died during its continuance, and that of Samuel Dunn Johns, who died leaving no issue. With respect to the former, the condition subsequent was met when Willie Maurice Johns was in esse at the death of his father; with respect to the latter, the condition subsequent never was met, and the share which vested in Samuel Dunn Johns was in no way affected by the divestiture in the other case.

In Hawkins on Wills, p. 240, the rule is thus stated: "If real estate be devised to A., 'if' or 'when' he shall attain a given age, with a limitation over in the event of his dying under that age, the attainment of the given age is held to be a condition subsequent and not precedent, and A. takes an immediate vested estate, subject to be divested upon his death under the specified age. And if the devise be to A., if or when he shall attain a given age, with a limitation over upon his death under that age without issue, A. takes a vested estate, defeasible only in the event of his death without issue under the specified age. The rule is the same where the devise is to a class." In a note to the text it is stated that the rule applies also to bequests of personal property, and for this several English cases are given as authority.

Of course, it will not be contended that this rule obtains where the attainment of a given age, or the surviving a given period, is made part of the description of the legatee; but the authorities already cited go to show that the single circumstance of a limitation over in case of the death of a legatee, even though it be one of a class, and we have nothing else in this bequest, is not so descriptive, but explanatory of the sense, in which the testator intended the legatee's interest in the fund, to depend on his surviving the period of distribution.

Observing then the principles of construction indicated by the foregoing authorities, what room can there be in such a bequest as that we are considering, for an implication of survivorship? None that we can see. This then brings to bear directly upon this case, the doctrine of King v. King, 1 W. & S. 207, that where the enjoyment of an entire fund is given in fractional parts, at successive periods, which must eventually

arrive, the distinction betwixt time annexed to payment, and time annexed to the gift, becomes unimportant. In such case, it is well settled, that all the interests vest together.

Without attempting further discussion of the case, we conclude that the legacy to the brothers and sisters of the testatrix vested in them immediately upon her death; that upon the death of William Maurice Johns, during the continuance of the prior estate, his share was divested, only to become vested in Willie M. Johns, upon whose death, happening also during the continuance of the prior estate, it passed to his legal representative. It follows that the auditor properly distributed the fund.

And now, January 31, 1900, the exceptions are overruled; the report of the auditor is confirmed absolutely and the trustee is ordered to pay over the fund in its hands in accordance therewith.

*Error assigned* was the decree of the court.

*O. C. Bowers*, for appellant.—This is a gift to a class not to individuals by name, and the first consideration is, at what period are the members of the class to be ascertained; at the death of the testatrix, or at the period of distribution? We do not overlook the rule that, prima facie, the class is to be ascertained at the death of the testatrix. This presumption, however, is frequently overcome, and we contend, by slighter expressions than those contained in the will under consideration: Long v. Blackall, 3 Vesey, 486; Leake v. Robinson, 2 Merivale's Chancery, 363.

The legacies to the brothers and sisters were contingent upon their surviving the life tenant: McClure's App., 72 Pa. 414; Robinson v. Wood, 4 Jurist, N. S. 625; O'Mahoney v. Burdett, L. R. 7 Eng. & Ir. Ap. 388.

The rule in Pennsylvania is that the same condition of survivorship applies to the substituted legatee as applies to the original or first beneficiary: Cascaden's App., 153 Pa. 170.

*Walter K. Sharpe*, for appellees.—The payment of the shares of the brothers and sisters in this estate is not postponed for the purpose of allowing them to arrive at some particular age

or for the purpose of enabling them to fulfill some condition; the only purpose of postponing the distribution is to let in the life estate of the husband.    Under these circumstances it has been held by authorities so numerous that a citation of them would weary the patience of the court that the rule invoked by the appellant has no application: King v. King, 1 W. & S. 205; Chew's App., 37 Pa. 23; McClure's App., 72 Pa. 414; Ross v. Drake, 37 Pa. 376; Strother v. Dutton, 1 De Gex & Jones, 675; Packman v. Gregory, 4 Hare, 396; Homer v. Gould, 1 Simon's N. S. 540; Crawford v. Ford, 7 W. N. C. 532; Smither v. Willock, 9 Vesey, 233; Byrnes v. Stilwell, 103 N. Y. 453; McArthur v. Scott, 113 U. S. 340; Lenz v. Prescott, 144 Mass. 505.

OPINION BY MR. JUSTICE MESTREZAT, May 29, 1900:

The clear and elaborate opinion of the learned president of the court below, thoroughly discussing all the questions arising in the case and citing numerous authorities to sustain his position, relieves us from an extended review of the questions involved in this controversy.    Many cases in our own and other states might be added to those cited by the court which clearly show the correctness of his conclusions, but it is unnecessary.

The testatrix devised and bequeathed her entire estate to her executor in trust to convert the same into money and to pay the interest and income thereof to her husband, Edward Carstensen, during his life.    The will then provides as follows: "And from and after the decease of my said husband, I give, devise, and bequeath the whole estate then remaining to my brothers and sisters; the child or children of any of my said brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living."

The learned counsel for the appellant contends that the ulterior bequest to the brothers and sisters was to them as a class, and while conceding the rule to be that prima facie the members of a class are to be ascertained at the death of the testatrix, yet he maintains that the language used in Mrs. Carstensen's will is sufficient to overcome that presumption and to show that at the time of distribution is the date at which those entitled to her estate are to be determined.    He therefore in-

sists that the interests of the legatees did not vest at the death of the testatrix. We are, however, by no means convinced that his interpretation of Mrs. Carstensen's will is the right one. The brothers and sisters of the testatrix were in esse at the date of her death, and the time when they were to come into possession of their legacies was fixed by the will, to wit: at the death of Edward Carstensen, the life tenant. The bequest is not qualified, but is absolute and immediate. There was no condition precedent attached to the gift which the legatees were required to fulfil prior to receiving the bequest. The time fixed by the testatrix for the enjoyment of the ulterior interests in her estate was not annexed to the legacies themselves and was in no sense a part of the description of the objects of her bounty. The language of the will, under the well recognized rules of construction, does not support such a contention. It is evident that the only object of the testatrix in the postponement of the distribution of the estate among her brothers and sisters was the desire she had to give her husband a life interest in it. This is quite apparent from the whole will. We think, therefore, that the interest of the brothers and sisters was not contingent upon their surviving the life tenant, but that it vested at the death of the testatrix.

We cannot agree with the appellant that the condition upon which the legacies were liable to be divested or defeated was simply the death of the legatees in the lifetime of Edward Carstensen, the life tenant. The divesting contingency was not merely the death of the legatee during the continuance of the particular estate but it was his or her death during that period leaving a child or children. The testatrix in her will makes an absolute bequest to her brothers and sisters and then is added the clause: "the child or children of any of my said brothers and sisters who may then be dead, to take and receive the share that his or their parent would have taken if living." There is no provision made in the will for the disposition of the interest of any brother or sister who might die prior to the death of the life tenant without leaving a child or children. In such an event, there is no divestiture of the title acquired by the general bequest. But should any of the brothers or sisters die leaving children during the life tenancy, the effect would be, under the clause we have just quoted, to divest the interest the

deceased parent acquired under the preceding clause of the will. The substituted legacy would thus become complete on the happening of this contingency and the interest bequeathed to the deceased parent would vest in his surviving child.

The views above expressed are fully sustained by the authorities cited in the opinion of the court below and they need not be repeated here. They are likewise confirmed by the application of the well established rule that a legacy will be regarded as vested rather than contingent unless the language of the will indicates that the testator had a different intention. There is nothing whatever in Mrs. Carstensen's will that affords any ground for the contention that she intended only those of her brothers and sisters and children of a deceased brother or sister who survived her husband, to participate in the distribution of her estate. On the contrary, the language used, we think, conveys a different intention and, as interpreted by the well known rules applied in the construction of wills, leads to the conclusion that the interest given the primary legatees in the will in hand was intended to be absolute and indefeasible, subject to be defeated only by the death of the legatee leaving children during the life tenancy of the first taker.

It results from what we have said that on the death of William Maurice Johns, his interest in his sister's estate was divested and such interest was thereupon immediately vested in his son, Willie M. Johns, who was his father's only child and in esse at his father's death. The son having died without issue, the interest in Mrs. Carstensen's estate acquired by him during the tenancy of Edward Carstensen was, after the latter's death, payable to the son's legal representative. The interest of Samuel Dunn Johns who died without issue during the continuance of the life tenancy, was not divested and hence, in this distribution, must be awarded to his administrator.

The several assignments of error are overruled and the decree of the court below is affirmed.

MR. JUSTICE MITCHELL dissenting:

I would reverse this decree. Even if the legacy to the brothers and sisters, being to a class, vested at the death of testatrix, it vested subject to the condition that it must open to let in after-born members of the class, and equally that it must close

or be narrowed as to any member dying in the lifetime of the husband. If the member so dying left issue then such issue came in under the express words of the will, not by inheritance but as purchasers whom no act of their ancestor could exclude. Their mere survivorship of him divested his interest if it was vested before. So in the other event of a member dying without issue, his interest was divested and he dropped out of the distribution by the necessary intendment that the gift should not go to any one else during the husband's life, and that no brother or sister should have any benefit or control over it unless he or she survived the husband. This actual intent of the testatrix being to me perfectly clear, I would not permit any rules of construction to impose a different artificial or conventional meaning on her words.