## Buckman's Estate.

*George W. Harkins, Jr.,* for exceptant; *George Ross,* contra.

GEST, J., April 17, 1930.—Joseph C. Buckman, by his will dated Oct. 18, 1894, devised to his wife, Carrie, "the net income of my estate during the term of her natural life." And his residuary estate he devised "to be divided in equal shares amongst all my children or their heirs."

The testator had five children: two daughters, Florence and Jennie, and three sons, Walter R., J. Morris and Harry L. Buckman. His daughter, Florence, became *non compos mentis,* and the testator on Dec. 1, 1914, executed a codicil in these words: "My daughter Florence's share is to be invested and she to have the income of the same during her lifetime, at her decease the principal sum is to be equally divided among my other children should any be deceased leaving children said share is to be equally divided among them." On Jan. 11, 1918, Jennie Watson, one of the daughters, died, leaving two children, J. Walter and Caroline B. Watson; and on Oct. 31, 1918, the testator died. His wife had predeceased him.

On June 20, 1923, J. Morris Buckman died without issue; on Feb. 9, 1925, Walter R. Buckman died, leaving two children, Emily M. and Walter R. Buckman, Jr.; and on Aug. 8, 1927, Florence died, leaving Harry L. Buckman the only surviving child of the testator.

In his adjudication, the Auditing Judge, in disposing of the share of Florence, awarded one-third thereof to Harry L. Buckman, one-third to J. Walter and Caroline B. Watson, formerly Warner, children of Jennie, and one-third to Emily M. and Walter R. Buckman, Jr., children of Walter R. Buckman. This was on the theory that the gifts in remainder were contingent upon sur-

vivorship at the death of Florence. The widow and executrix of the will of J. Morris Buckman has filed these exceptions on the ground that the interest of J. Morris Buckman was vested, and that the fund should have been awarded one-fourth to Harry L. Buckman, one-fourth to the children of Jennie Watson, one-fourth to the children of Walter, and one-fourth to the exceptant as executrix of the will of J. Morris Buckman.

The will provided that on the decease of the testator's wife, the life tenant, the estate should be divided among all the testator's children or their heirs, and as the testator's wife predeceased him, the interests of all the children clearly vested at his death. Even had the wife survived, this would still be the case: Patterson *v.* Hawthorn, 12 S. & R. 112, a leading case, repeatedly followed, and recently in Eichelberger's Estate, 274 Pa. 576.

Florence having become *non compos mentis*, the testator naturally protected her by means of a trust for her life, and directed the remainder at her death to be equally divided among "my other children," with a proviso that should any be deceased leaving children, said share (meaning, of course, the share of any deceased child) should be equally divided among them. When the testator, in dealing with the share of Florence, referred to his "other children," we cannot doubt that he meant all his children except Florence, as clearly as if he had mentioned them by name, and the provision for equality, repeated from the will, shows that he intended to benefit all of his children alike, except for the special provisions made for Florence on account of her mental condition: Sailer's Estate, 26 Dist. R. 1062. In Berg's Estate, 96 Pa. Superior Ct. 125, cited in the adjudication, the will directed a division, not among my "other children," but "among my remaining children," which is a very different thing. The natural meaning of "remaining children" is surviving children, those who remain at the death of the life tenant.

The testator, it is true, provided that if any of his "other" children be deceased (at Florence's death) leaving children, they should take their parent's share, and the Auditing Judge was of the opinion that the remainder was contingent, and J. Morris Buckman having died without issue, his executrix could not take. This construction, however, ignores the principle of Carstensen's Estate, 196 Pa. 325. There the devise on the decease of the life tenant, the husband of the testatrix, was to "my brothers and sisters, the child or children of any of my said brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living." This was held to vest an interest in the brothers and sisters at the death of the testator, subject only to a divestiture in favor of their children, if they left children, and the estate of one who died without issue during the life tenancy was held entitled. As Judge Ashman pointed out in Adams's Estate, 208 Pa. 500, which was affirmed by the Supreme Court, "the gift to the brothers and sisters was in absolute terms with no condition that they should be living at the death of the husband, the tenant for life, and there was simply an alternative limitation, that if a brother or sister should be then dead, but leaving issue, his issue should be substituted to his interest."

The case is similar to Strother *v.* Dutton, 1 De G. & J. 675, where the testator bequeathed a fund, the interest to be paid to his daughter during her life, and "at her death the principal to be distributed equally among her children, if any children are living from son or daughter being dead [*sic*] such child or children to be equally entitled to the share their parent would be entitled to if living." Certain of the life tenant's children died without issue during her life, and Lord Justice Knight Bruce held that their interests were vested, saying: "That gift in favor of the issue of children who have issue does not

affect the shares of the children who died without leaving issue." Carstensen's Estate has been so frequently followed that it would be tedious and unnecessary to refer to all the cases. We mention, however, Massey's Estate, 235 Pa. 289; Neel's Estate, 252 Pa. 394, and Jennings's Estate, 266 Pa. 60.

The Auditing Judge, however, held that the gift over on the death of Florence was implied only from the direction to divide, which, in his opinion, made the remainder contingent. In McClure's Estate, 72 Pa. 414, which is cited in the adjudication, the estate was to be "divided" at the widow's decease, but the Supreme Court held that the remainders to the nephews and nieces were vested and that the husband of a deceased niece was entitled to her share. In Rosengarten v. Ashton, 228 Pa. 389, the remainders were clearly contingent for other reasons. The direction was to pay over and distribute among all the grandchildren and the issue of such as may be deceased, such issue to take the share the parent would have taken if living at the time of the death of the last surviving child. This was a gift to a class which could not be determined until the period fixed by the will. In Alburger's Estate (No. 2), 274 Pa. 15, and in the other cases cited in the adjudication, the construction of the wills was controlled by language expressly referring to survivorship at the time of distribution.

The passage so often cited from Smith on Executory Interests, § 314, especially in Rosengarten v. Ashton, reads as follows: "Where there is no gift but in a direction to pay or transfer or divide among several persons, at a future period; though the future period is annexed to the payment, possession, or enjoyment, yet it is also annexed to the devise or bequest itself. For, in this case, the direction to pay or transfer or divide constitutes the devise or bequest itself; and, therefore, the vesting in interest is postponed, and not merely the vesting in possession or enjoyment."

It will, however, readily be perceived from a consideration of the context and of the cases cited by Mr. Smith that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like. See Leake v. Robinson, 2 Meriv. 363; Murray v. Tancred, 10 Simons, 465, and Sansbury v. Read, 12 Ves. 75 (said by Jarman to be an obscure will). The above remark of Mr. Smith does not seem to be intended as a general canon of construction. And why should it be? What substantial difference is there between a devise after a life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided among them?

Our more recent cases restrict greatly the force of what was said so broadly in Rosengarten v. Ashton. See Groninger's Estate, 268 Pa. 184; Marshall's Estate, 262 Pa. 145; Jennings's Estate, 266 Pa. 60; Edelman's Estate, 276 Pa. 503. And before Rosengarten v. Ashton, Ashman, J., dissenting in Man's Estate, 2 Dist. R. 830, said: "This rule, of course, is intensely artificial and probably defeats the intention of the testator quite as often as it carries the intention into effect. A man cannot give an interest in his estate, short of the whole, without dividing the estate; and a direction to divide either in the present or the future would by most testators be regarded as one and the same thing with a direct gift." The Supreme Court in Man's Estate, 160 Pa. 609, reversed this court following Judge Ashman's dissent. There are many English cases to the same effect. In Bennett's Trust, 3 K. & J. 280, a case similar to the present, Vice Chancellor Wood said: "It is clear that the use of the words 'pay and transfer' as the only words of gift does not make such a bequest contingent," citing Leeming v. Sherratt, 2 Hare, 14;

Strother *v*. Dutton, 1 De G. & J. 675; Adams *v*. Robarts, 25 Beav. 658; Packham *v*. Gregory, 4 Hare, 396.

Furthermore, the presumption is always in favor of a vested legacy, especially when it is given to children: Amelia Smith's Appeal, 23 Pa. 9; Fitzwater's Appeal, 94 Pa. 141.

Our conclusion is that the executrix of J. Morris Buckman is entitled to one-fourth of the estate held in trust for Florence, and the exceptions should be sustained. The fact that under the will of J. Morris Buckman, his widow, a stranger to the blood of the testator, will ultimately receive the award, has, in our opinion, nothing to do with the case.

Accordingly, the exceptions of Ellie G. Buckman, executrix of the will of J. Morris Buckman, are sustained, and the account is recommitted to the Auditing Judge in order that distribution may be awarded in accordance with this opinion.

LAMORELLE, P. J., dissenting.—The one question raised by exceptant is whether the executrix of the will of a son who survived testator, but died childless during the life of the *cestui que trust*, is entitled to a share of principal as coming within the designation of "other children" in the codicil to testators' will, which codicil reads as follows:

"My daughter Florence's share is to be invested and she to have the income of the same during her lifetime, at her decease the principal sum is to be equally divided among my other children, should any be deceased leaving children said share is to be equally divided among them."

The Auditing Judge divided the fund in equal shares among one surviving child and children of two deceased children, ruling that the estate of the son (who, while surviving his father, is now dead and without descendants) was not entitled.

It is contended that the codicil, read in connection with the residuary clause of the will, shows a clear intent to vest the entire estate in the children, as of the date of testator's decease; on the other hand, it is claimed that the date of the death of the equitable life tenant fixes not only the time of distribution but also determines the class which is to take.

For the sake of clarification, certain facts should be set forth in detail.

Joseph C. Buckman died in 1919. His will was made Oct. 8, 1894. After giving the income to his wife for life, this disposition was made of the residue:

"And as to all the residue and remainder of my Estate, real, personal or mixed of whatsoever nature or kind, or wheresoever situate at the time of my said wife's decease I do hereby give, devise and bequeath to be divided in equal shares amongst all my children or their heirs."

On Dec. 1, 1914, he made the hereinbefore quoted codicil with reference to his daughter, Florence.

At the time of the making of this codicil the daughter, Florence, was unmarried and insane. Her then mental condition would seem to be the reason for the change in the will. There were then living four children, as well as the wife. One of these children, Jennie, predeceased testator, dying Jan. 11, 1918, survived by two children, J. Walter and Caroline, and by a husband, Emmor T. Watson. The wife also died in the lifetime of testator.

All of his estate has been distributed in four equal parts among three sons, Walter R., J. Morris and Harry L., each one-fourth, and two grandchildren, the issue of the daughter, Jennie, who died in decedent's lifetime, and who took their parent's one-fourth.

One of these three sons, J. Morris, has since died; he leaves no issue. His wife, however, survived him. He bequeathed to her his estate and made her executrix of his will.

Florence, an inmate of the State Hospital at Norristown, died Aug. 6, 1927, and we are concerned with the proper distribution of this one-fifth of the estate directed to be retained for her benefit for life.

Testator's original purpose was to send his estate down the line of his descendants, excluding every one else. This is manifested by the gift of the residue in equal shares to his children. There was no reason for him to add that, in event of any of them dying in his lifetime, *their* children were to take in their place and stead. The law attended to that: Section 15 *(a)* of Wills Act of 1917. The law, however, nowhere provides that where a married child shall die in the lifetime of testator, a surviving spouse shall participate; participation is limited to the issue of the deceased legatee.

When testator eliminated Florence's share by confining it to income, he did not follow his intention as contained in the will, but, on the contrary, decreed a division among his other children and the issue of any who were dead. There was a reason in this; it was to exclude (as does the law with reference to the will itself) those not of his blood, and to include those who were, by an alternative gift to children of his deceased child or children. The codicil had taken away from her the *corpus* of the estate, which, had it been hers, would have passed from her to her living brothers, and to the descendants of those then deceased, but would have ignored those dead without leaving issue.

It was unnecessary for testator to use the word "then" (an adverb of time), where the context showed that "then" (as an adverb of time) was meant. "Other children," if living, were to take; if dead, their children were substituted; but no provision was made for other children who were at the time deceased and had no issue then surviving.

The matter has been ably argued and numerous briefs submitted. There are many authorities in point, some *"pro"* and some *"con,"* but when all is said and done, precedents are of little moment, in arriving at intention, where, as in the instant case, a comparison of the original will with the codicil demonstrates that testator's expressed intent was to benefit his children; in the alternative, their descendants, and none others.

The thought is well expressed in Long's Estate, 270 Pa. 480, 487, where the present Chief Justice says: "We need only say, of the many authorities cited to us by counsel, that 'precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail. Neither precedents nor rules of construction can override the testator's expressed intent' (Redding *v.* Rice, 171 Pa. 301, 306) ; and this, in the present case, the court below correctly found from the will." See, also, Reiff *v.* Pepo, 290 Pa. 508.

The Auditing Judge stressed Berg's Estate, 96 Pa. Superior Ct. 125, a case in some respects analogous to this, wherein, as in this, there was no antecedent gift independent of the time fixed for payment, and where it was held that the gifts in remainder were contingent and not vested.

Carstensen's Estate, 196 Pa. 325, does not seem to me to be in point, because there the court dealt with an outright gift. Here we have a will, wherein there is a gift to all the children; and a codicil, wherein there is no gift, but merely a direction to divide upon the death of the *cestui que trust.* They

658

must be read together. Testator naturally expected his daughter, Florence, to survive him; otherwise there was no reason for the creation of the trust; and in expectation of such survivorship, he in effect revoked the legacy in her favor and provided for a distribution of the *corpus* of her share, effective upon her decease, by directing a division of same among his other children and the issue of any deceased. The only gift is in this direction to divide, and for that reason the class who were to take could not be definitely determined until her death, and the widow of the son who was at this time deceased did not form a member of the class.

For these reasons, I would dismiss the exceptions.

Judge VAN DUSEN concurs in this opinion.