# Tomlinson's Estate.

*Wills—Construction—Vested or contingent legacy.*

Where a testator gives all of the income of his estate to his wife
for life, and directs that if the income is not enough to properly
care for her, she shall have two hundred dollars per year in addi-
tion, and further directs that after her death a tombstone shall be
placed over her grave, and then directs that after the death of his
wife his estate shall "be divided equally between my nephews and
nieces and the heirs of those who are deceased, the heirs of those
who are deceased to have the parents' share," the children of a
nephew who died in the lifetime of the widow will be entitled to
take their father's share under the testator's will, as against the
executors of the nephew claiming the share as having vested in the
nephew.

Argued Dec. 11, 1914.    Appeal, No. 235, Oct. T., 1914,
by Mary H. Tomlinson and William H. Gaskill, Exec-
utors under the will of Albert S. Tomlinson, deceased,
from decree of O. C. Philadelphia Co., Jan. T., 1910, No.
571, dismissing exceptions to adjudication in Estate of
Isaac W. Tomlinson, deceased.    Before RICE, P. J., OR-
LADY, HEAD, KEPHART and TREXLER, JJ.    Affirmed.

Exceptions to adjudication.

The material portions of the will of Isaac Tomlinson
were as follows:

I direct my executor hereafter named to have placed
at my grave head and foot stones, with date of birth and
death, marked thereon; and also after the death of my

wife the same kind of stones placed to her grave, the same to be like what are now placed at the grave of my deceased wife. I give and convey in trust to the William Penn Cemetery Company three hundred dollars, the income from it to be used in keeping my burial lot in fair condition and also the lot of Henry Mason near by, the said bequest not to begin during the lifetime of my wife.

I give to my nephew, Isaac Tomlinson, my gold watch and chain. I give and bequeath to my wife Hannah C. Tomlinson if living at the time of my death all of my household goods and furniture, also my horse and carriages and harness and contents of the barn.

I also give her my wearing apparel to do with as best suits her.

My will is that my wife if living after my death is to have the use or income of the house and grounds where we now live; and also the rents from the house and lots at Somerton during her lifetime. If I have not fully settled up the estate of my deceased wife, Deborah Tomlinson, my executor will complete the settlement.

I give my executor the right to change any of my investments that may be for the best interests of my estate. I give and bequeath to my wife, Hannah C. Tomlinson if living at the time of my death all the income both real and personal during her lifetime to be paid to her as often as she may require it, if the income is not enough to properly care for her my executor will pay her in addition the sum of two hundred dollars each and every year during her life. I direct my executor to attend to a life insurance policy and make the annual payments until the policy ends or my estate is to be fully settled and if policy is not ended my executor is to do the best he can with it.

As some of my investments are not at present in a good financial condition, I give my executor two years after the death of my wife if it is thought best to settle up my estate. After the death of my wife Hannah C.

23, (1915).]    Statement of Facts—Opinion of Court below.

Tomlinson my will is that my estate be divided equally between my nephews and nieces ánd the heirs of those who are deceased, the heirs of those who are deceased to have the parents' share.   My meaning is that the children of my brothers Watson, Spencer and John shall each share alike.

I name and appoint for executor of this my last will and testament The Provident Life and Trust Company, No. 409 Chestnut street, Philadelphia.

From the record it appeared that Albert S. Tomlinson a nephew of deceased died during the widow's lifetime testate and leaving minor children.   The question before the court was whether the children of Albert S. Tomlinson took their father's share under the will of Isaac W. Tomlinson, or whether the share went to the executors of Albert S. Tomlinson as an interest which had vested in Albert S. Tomlinson in his lifetime.

In the appellant's history of the case the following statement is made:

"In this connection, it may be proper to state that this proceeding is a friendly one, taken by the executors under the belief that it is really more for the interest of the minor children, as their father viewed it, that this share of personal estate and a further interest in unsold real estate, shall pass under his will, in relief of his partly encumbered valuable real estate, (of which his estate consisted almost entirely) so that it may not become necessary to further encumber or sacrifice part of it, but preserve it as much intact as possible for equal division among his children under his will, subject to the life interest of his widow, upon whom they are dependent for support and education."

The auditing judge awarded the fund to the children. On a readjudication the same action was taken.

On exceptions to the readjudication ANDERSON, J., filed the following opinion:

After certain provisions for his widow out of the income of his estate, testator directed as follows:

"After the death of my wife, Hannah C. Tomlinson, my will is that my estate be divided equally between my nephews and nieces and the heirs of those who are deceased, the heirs of those who are deceased to have the parents' share. My meaning is that the children of my brothers, Watson, Spencer and John, shall each share alike."

The language of the will speaks explicitly of a division of the residue, after the death of the widow. Knowing that one nephew and one niece had already died and foreseeing that the same thing might happen as to others of his nephews and nieces during his wife's lifetime, the testator provided that in such case "the heirs" of those who are deceased should take—the use of the word "heirs" is in the sense of "children" being indicated by saying that they are to have the parents' share, thus showing a clear intention that the children of deceased nephews and nieces should participate with the living nephews and nieces in the distribution.

This is in accordance with Carstensen's Estate, 196 Pa. 325, where it was held that although the remaindermen took vested interests at the decease of the testator, their interests were subject to be divested in case of their decease during the pendency of the life estate; and Burk's Est., 21 Dist. Rep. 357, the latest case in this court on the subject, where the testatrix directed her estate, after the death of the life tenant, to be converted into money and the proceeds thereof divided among the children of her sisters, providing the children of any deceased child of her said sisters to take only the share the parent would have taken if living, and we held that the children of nephews and nieces who had died during the pendency of the life estate, took in substitution for the parents, and Algaier's Est., 16 Dist. Rep. 913, cited by exceptants, is not in conflict with these decisions. There the question arose as to the construction of the codicil to the will. The will was construed to give absolute estates to the widow and children. The codicil, instead of giv-

23, (1915).] Opinion of Court below—Opinion of the Court.

ing to the widow absolutely a part, gave her a life estate in the whole estate, the remainder at her death to go to testator's children or their respective issue in equal parts, the issue of any deceased child to receive the parent's share. Upon the principle that a codicil is to be read in the light afforded by the will and to be changed to the extent only that it is clearly inconsistent with it, it was held that the estate having vested in the children under the will, the codicil would not affect such vesting, except to postpone possession until after the death of the life tenant; while in the present case, the distributing clause is part of the original gift and the gift must become conditional, so as to give it effect.

We believe that the intention of the testator was, as found by the auditing judge, and therefore both upon reason and authority his conclusion must be upheld. The exceptions are dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*G. Herbert Jenkins,* for appellants.—The award should have been to the executor: Algaier's Est., 16 Dist. Rep. 913; Milligan's Est., 244 Pa. 161; Mulliken v. Earnshaw, 209 Pa. 226; Thran v. Herzog, 12 Pa. Superior Ct. 551; Wetherill's Est., 214 Pa. 150; Menoher's Est., 18 Superior Ct. 335; Reed's App., 118 Pa. 215; Morrison's Est., 139 Pa. 306; Jones' Est., 211 Pa. 364; McFillin's Est., 235 Pa. 175; Bache's Est., 246 Pa. 276; Packer's Est., 246 Pa. 116.

*Randolph Sailer,* for appellees, cited: Burk's Est., 21 Dist. Rep. 357; Carstensen's Est., 196 Pa. 325.

OPINION BY HEAD, J., October 11, 1915:

This is a friendly contest between the personal representatives of Albert S. Tomlinson, deceased, and the guardian of his minor children. The said Albert was a

nephew of Isaac W. Tomlinson, the testator, and survived the latter but died during the life. of the widow of the testator, leaving to survive him minor children. The single question is, do these children take under the will of the testator the share that would have gone to their father had he survived the widow, or was that share indefeasibly vested in their father Albert by his survivorship of the testator so that his children had nothing under the will?

Established rules of construction are valuable and necessary in the construction of wills of such character that it is impossible, without resorting to such rules, to determine the intent of the testator. But where such intent can be reached by fairly interpreting the language of the will itself, we need not have recourse to rules that were made for doubtful cases only. In the present case it is clear the widow of the testator was the first and chief object of his bounty. While she lived, her welfare dominated all other considerations. So evidently true is this that even in the bequest to the cemetery company of a sum of money, the income of which was to be applied to the upkeep of the burial lot of the testator, it was provided this bequest was not to begin during the lifetime of his wife. The testator further gave to his wife, during her lifetime, all of the income to be derived from either real or personal estate, and, considering the possibility this might not be sufficient for her wants, he declared that, in such event, she should have the right, in addition to the income, to the sum of $200 of the principal each and every year while she lived. These provisions point strongly to the idea of the testator that even the amount of his estate, if any, that might be the subject of any bequest over, could not be ascertained until the happening of the death of his wife.

There is no legacy to any one nomination. His language is, "after the death of my wife my will is that my estate be divided equally between my nephews and nieces and the heirs of those who are deceased, the heirs

of those who are deceased to have the parent's share." We suppose it to be conceded that in this clause the testator used the word "heirs" as legally synonymous with children. He does not use language which indicates a then present intention in his mind to give anything to any particular person. His clearly contemplated purpose was a division of his property after the death of his wife. Among whom was that division to be made? Had he previously given to his nephews and nieces, and the heirs of those deceased, the residue of his estate, the mere fact that the distribution could not take place during the life of his wife, would not prevent the legacies from fully vesting. All of the cases so hold.

But here the gift itself is an integral part of his plan of distribution. It is only because certain persons are described and designated as distributees they can, with propriety, consider themselves legatees at all. They cannot dissever the single clause of the will on which their title rests, affirming the right of the testator to make his own plan of distribution, but denying to him the equally clear right to name or describe those whom he wishes to share in that distribution. Has he not done this? Had he stopped with the declaration that the distributees were to be his "nephews and nieces and the heirs (children) of those who are deceased," it might be fairly argued his actual intent was that assigned by the law to the use of such a phrase. But the testator has gone farther. He has not left to legal construction the determination of the effect of the death of one of his nephews or nieces before the division was to be made. He declares, in the same clause of the will that the "heirs (children) of those who are deceased to have the parent's share." In the face of this direction why should we, how can we, undertake to say the children of Albert, a deceased nephew, are not "to have the parent's share"?

We suppose the principle contended for by the appellant is as strongly stated in McFillin's Est., 235 Pa.

175, as in any other case, but even there it was said the general rule of construction in such cases would always give way if a different intent was plainly manifested in the will.    We regard this will as coming within that exceptional class.    The distinction we think is clearly enough pointed out in the opinion of the learned Orphans' Court dismissing the exceptions to the readjudication.    That opinion will be printed as part of the report of the case.

For the reasons here indicated, as well as those stated by the learned court below, we adopt the conclusion there reached.

Decree affirmed.