Samuel's Estate.

Argued October 4, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, RHODES and HIRT, JJ.

*William H. Steeble,* of *Freeman, Fox & Steeble,* for appellant.

No appearance was made, nor brief filed, for appellee.

OPINION BY STADTFELD, J., December 19, 1939:

This is an appeal from the decree of the Orphans' Court of Philadelphia County dismissing the exceptions filed by Edward Samuel, Jr., appellant, to the decree of distribution entered by that court in connection with the account of Girard Trust Company, substituted trustee for Maria Thom (nee Myers).

Testator, David Samuel, died January 15, 1881, leaving a will which was duly probated. The question raised by appellant arises under the third and eighth items of the will which are as follows: "Third. I hereby appoint my son John Samuel and my son Edward Samuel trustees as to the sum of four thousand Dollars ($4000) to pay the Income thereof to my Grandchild Maria Myers,

child of my deceased daughter Clara Myers; and at her decease to pay the principal sum, to the issue of my said Grandchild her surviving; and if she shall die without leaving issue, to pay the same to my five children as hereafter named in Eighth direction; and the issue of any deceased child—such issue to take the parent's share and remainder. ...... Eighth. All the rest, residue and remainder of my Estate, real and personal, whatsoever and wheresoever, I devise and bequeath unto my children, Henry, John, Eleanor, Edward and Joseph Bunford, their heirs and assigns forever, share and share alike in equal parts."

Said Maria Myers (Maria Thom) died February 22, 1938, without issue but survived all children of testator. Edward Samuel, a child of testator and father of appellant, died March 27, 1896, leaving to survive him, one child, Edward Samuel, Jr., the present appellant, and no issue of deceased children. Henry Samuel died without issue on July 26, 1893. John Samuel died August 22, 1913, leaving to survive him, three children, Bunford Samuel, Frank Samuel and John D. Samuel, and no issue of deceased children. Frank Samuel died April 30, 1934, survived by three children, Elizabeth Poulieff, Rebecca S. Robinson and Snowden Samuel, and no issue of deceased children. The issue of John Samuel living at the death of the beneficiary for life on February 22, 1938, were thus Bunford Samuel and John D. Samuel, children, and Elizabeth Poulieff, Rebecca S. Robinson and Snowden Samuel (children of Frank Samuel), grandchildren. Eleanor Samuel died without leaving issue on November 29, 1907. Joseph Bunford Samuel died without leaving issue on January 1, 1929.

By adjudication of VAN DUSEN P. J., dated June 30, 1938, distribution was awarded in five equal shares to the personal representatives of testator's five deceased children, and in the schedule of distribution, awards were made to those entitled under the residuary estates of the deceased children. On September 15, 1938, Ed-

ward Samuel, Jr. filed exceptions to the award of a one-fifth share to the personal representatives of his father. Said exceptions were dismissed by the court en banc December 9, 1938, BOLGER and KLEIN, JJ., dissenting. The schedule of distribution was filed and approved by VAN DUSEN, P. J., April 28, 1939. This appeal was taken May 12, 1939.

Briefly stated, the situation presented is as follows: the testator bequeathed a certain sum in trust, the income of which was to be paid to a named grandchild and at her decease, the principal sum was to be paid to her surviving issue; and if she should die without leaving issue, the same was to be paid to the testator's five children—specifically named by reference (Henry, John, Eleanor, Edward and Joseph Bunford)—and the issue of any deceased child—such issue to take the parent's share and remainder.

All five of testator's children survived the testator, but predeceased the life tenant, testator's grandchild, who died without leaving issue. Edward Samuel, Jr., appellant, was the sole surviving child of one of the testator's five named children, Edward Samuel. The contest here is really between Edward, Jr., who claims by way of substitution, and the personal representative of his father's estate.

The sole question involved is whether the substitutionary gift to issue relates to the death of testator or to the death of the first taker. The auditing judge and a majority of the court below held that the substitutionary gift was limited to the lifetime of testator, and as above stated, awarded the share of Edward Samuel to his estate. It is appellant's contention that the substitutionary gift operated and that the share of Edward Samuel should be awarded to his only child, Edward Samuel, Jr., appellant.

The construction is accepted on both sides that the interests of the testator's five named children were vested in the first instance upon the death of the tes-

tator; that, the life tenant having died leaving no issue, these interests were free from divestment or defeasance insofar as the fulfillment of that condition is concerned; and that these interests were not lost simply by their own deaths prior to the death of the life tenant. The assumed construction is warranted in view of *Goodin's Estate,* 328 Pa. 548, 196 A. 1; *McGlinn's Estate,* 320 Pa. 389, 182 A. 495; *Neel's Estate,* 252 Pa. 394, 97 A. 502; *Packer's Estate,* 246 Pa. 116, 92 A. 70. The controlling question, therefore, is whether, under the terms of the bequest to the five named children, there is present any contingency that operates to divest or defeat their interests. The testator, in his will, bequeathed the corpus of the trust "to my five children ......; and the issue of any deceased child—such issue to take the parent's share and remainder." The terms of this clause, in our opinion, clearly operate to divest the interest of any one of testator's children, predeceasing the life-tenant and leaving issue, and by substitution to vest his or her interest in the issue. In other words, the substitutionary gift to the issue of a deceased child of the testator need not vest at the time of the testator's death, but is operative during the life of the first taker.

The problem of construction involved in the instant case has been passed upon by the appellate courts of this state, and those decisions govern here. In *Carstensen's Estate,* 196 Pa. 325, 46 A. 495, testatrix had devised and bequeathed her entire estate in trust to convert the same into money and pay the interest and income thereof to her husband during his life and from and after the decease of her husband, she bequeathed the whole estate then remaining to her brothers and sisters; "the child or children of any brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living." The court there held that the interest of the brothers and sisters vested at the death of the testatrix subject to be defeated by legatee's leaving children during the life

tenancy of the first taker, in which case the substitutionary gift to the child or children becomes operative. In its opinion, the Supreme Court said, pp. 335, 336, "There is no provision made in the will for the disposition of the interest of any brother or sister who might die prior to the death of the life tenant without leaving a child or children. In such an event, there is no divestiture of the title acquired by the general bequest. But should any of the brothers or sisters die leaving children during the life tenancy, the effect would be, under the clause we have just quoted, to divest the interest the deceased parent acquired under the preceding clause of the will. The substituted legacy would thus become complete on the happening of this contingency and the interest bequeathed to the deceased parent would vest in his surviving child. ...... the language used, ...... as interpreted by the well known rules applied in the construction of wills, leads to the conclusion that the interest given the primary legatees in the will in hand was intended to be absolute and indefeasible, subject to be defeated only by the death of the legatee leaving children during the life tenancy of the first taker.

"It results from what we have said that on the death of William Maurice Johns, his interest in his sister's estate was divested and such interest was thereupon immediately vested in his son, Willie M. Johns, who was his father's only child and in esse at his father's death ......"

In *Tomlinson's Estate,* 61 Pa. Superior Ct. 23, testator bequeathed the income of his estate to his wife for life, and directed that after the death of his wife his estate shall "be divided equally between my nephews and nieces and the heirs of those who are deceased, the heirs of those who are deceased to have the parents' share." A nephew survived testator but died during the life of the widow, leaving to survive him minor children. The contest was between the executor of the nephew and the guardian of his minor children. This court,

finding the substitutionary gift to be effective during the life of the first taker and affirming an award to the guardian for the minor children, said, p. 29, "Had he (testator) stopped with the declaration that the distributees were to be his 'nephews and nieces and the heirs (children) of those who are deceased,' it might be fairly argued his actual intent was that assigned by law to the use of such a phrase. But the testator has gone farther. He has not left to legal construction the determination of the effect of the death of one of his nephews or nieces before the division was to be made. He declares, in the same clause of the will, that the 'heirs (children) of those who are deceased to have the parent's share.' In the face of this direction why should we, how can we, undertake to say the children of Albert, a deceased nephew, are not 'to have the parent's share'?"

If, in the instant case, we were to accept the position taken by appellee, relating the substitutionary gift to the death of testator, we would have to construe testator's intention as providing only for those issue of testator's children whose parents predeceased testator, and excluding the issue of the children dying after the testator but before the termination of the trust. It will, however, not be presumed that testator intended so to discriminate between the natural objects of his bounty.

There is, moreover, ample evidence here to support the conclusion that testator's intention was to give the share of a child who survived him but died *before the termination of the trust* to his or her surviving issue: see *Kelly's Estate,* 303 Pa. 391, 154 A. 719. The eighth and thirteenth provisions of testator's will provide for an equal distribution of his residuary estate among his five children. Having thus provided for his children in the residuary estate, testator's grandchild, Maria Myers, was made the chief object of his bounty in the specific legacy set up in the trust in question under the third provision of his will. So long as the grandchild lived her interest in the trust dominated all others. Testator's

clearly contemplated purpose was a division of the corpus only after the death of his grandchild. Considering the will as a whole, therefore, it is quite plain that insofar as the specific legacy in trust is concerned, he did not refer to the death of his named children during his own life time as a restriction upon the right of the issue to take. The substitutionary gift remained operative until the time for the division of the corpus upon the termination of the trust.

It is our opinion that the construction we have here adopted, favoring the lineal descendant of testator, in the absence of an expressed intention to the contrary, is, both upon principle and by authority, the proper one.

Decree of the court below is reversed, and distribution is directed to be made in accordance with this opinion. Costs to be paid out of the corpus of the trust involved in this appeal.