## Moore *against* Smith.

A legacy shall be deemed vested or contingent, just as the time shall appear to have been annexed to the gift or the payment of it.   And where there is no separate and antecedent gift, which is independent of the direction and time for payment, the legacy is contingent.

ERROR to the common pleas of *Perry* county.

Abraham Miller, administrator of John Moore, deceased, against Michael Smith and John Smith, executors of Michael Smith, deceased.   This was an action of debt for a legacy, and brought to recover one hundred pounds bequeathed to the testator's grandson, John Moore, who died after the testator, and before he arrived at the age of twenty-one years:—the question being whether the said legacy was vested or contingent.   The material part of the testator's will is as follows:

" As to such worldly estate wherewith it hath pleased God to bless me, I give and dispose thereof as follows:" (Debts and funeral expenses to be paid as soon as convenient, by his executors. Two sons appointed executors.   The tract he lived on to be divided: one part to Michael, and retain reservation to widow; 200 acres, another tract, devised to Michael.)   " Fourteen acres (described) to be conveyed to John Mineger, a grand-son, as soon as he arrives at twenty-one, as convenient."   (The residue of first tract devised to · go to his son John, together with another tract of 100 acres; another 200 acre tract to be divided, one-half to be conveyed to William Ramsay, the other half to his son John : special privileges and bequests to his wife to considerable amount:) " and my executors shall sell or dispose of my personal estate such as I do not bequeath, and out of the proceeds my said executors shall pay unto my son-in-law Peter Deerdouff, 50 pounds lawful money of the United States, on the first day of May 1822, and the further sum of 50 pounds, like money on the first day of May, in the year 1823; and further my said executors shall pay unto my daughter, Mary Dentsler, 30 pounds like money, on the 1st day of May 1824, and the further

sum of 35 pounds in the year 1829; and the further sum of 35 pounds to the said Mary or her heirs, in the year 1834.

" And further, my said executors shall pay unto my daughter Hestina Moore, 30 pounds in the year 1825, and the further sum of 35 pounds in the year 1830; and the further sum of 35 pounds unto the said Hestina Moore in the year 1835.

" And my said executors shall pay unto my daughter Sarah Miller, 30 pounds like money, in the year 1826; and the further sum of 35 pounds in the year 1831, and 35 pounds of like money in the year 1836.

" And my said executors shall pay unto my daughter Elizabeth Miller 30 pounds like money, in the year 1827, and 35 pounds in 1832, and 35 pounds in 1837.

" And further, my said executor shall pay unto my daughter Nancy Martin, 5 pounds in the year 1822, and the further sum of 5 pounds yearly and every year afterwards, until the residue of 100 pounds be fully paid unto her or her children.

" And further, my said executors shall pay unto my grand-son, John Moore, 100 pounds like money, as soon as he arrives to be 21 years of age.

" And further, I give and bequeath unto my son John, one of my horse creatures, his own choice; and it is my will and I do order that my said executors shall pay all the aforementioned sums of money on the 1st day of May in each and every year before mentioned, whether in writing or in figures, unto the said legatees or their heirs."

" Know all, &c. that I Michael Smith, &c. have this day made and published the foregoing will, to be my last will and testament, and further it is my will, and I do hereby empower my sons Michael Smith and John Smith, my executors therein mentioned, to have the same proven and recorded as a lien upon all my tracts of land, situated and bounded as is therein mentioned, and the said will being thus proven and recorded after my decease, shall be a lien on the said tracts of land, until my said executors or their heirs, executors or administrators, or assigns, shall have paid and satisfied all the legacies and bequeathments therein mentioned; and the receipts from the legatees or their heirs as is therein named or mentioned for the payment of all said legacies and bequeathments, shall be a sufficient release of the aforesaid lien to my said executors or to their heirs, executors, administrators or assigns.  In testimony whereof, I have hereunto set my hand and seal, this 6th day of January 1821."

. The court below (Hepburn, president) directed a judgment for the defendants.

*Reed,* for plaintiff in error.  This will is peculiar in its terms, and falls within the authority of no adjudicated case.  We rely on the intention of the testator, as evinced in the whole scope of the will,

[Moore v. Smith.]

and particularly in the form and manner of the other bequests in the will.

It is manifest, that the testator computed the whole amount of his estate real and personal, and designed to dispose of the whole of it between the devisees and the legatees to divide it.

The legacies are all by implication, and the time of payment fixed; and they are all given in the same form and words.

The testator had daughters married, and had grand-children, and had sons-in-law; some of his children dead, leaving children; some living; some of his sons-in-law dead, &c. The legacies, by the express terms of the will, are payable out of the proceeds of the personal estate. First, the executors are to pay to his son-in-law, Peter Verdauff, 50 pounds in 1822, and 50 pounds in 1823. To his daughter, Mary Dentlin, in 1824, in 1829, and in 1834. Now, if either of these legatees had died before the time of payment, would their legacies have lapsed? certainly not.

Further, his executors shall pay to his daughter Hestena 30 pounds in 1825, 35 pounds in 1830, and 35 pounds in 1835.

They shall pay to his daughter, Jeruel Miller, 30 pounds in 1826, 35 pounds in 1831, and 35 pounds in 1836. And to Elizabeth Miller 30 pounds in 1827, 35 pounds in 1832, and 35 pounds in 1837.

To his daughter Nancy five pounds a year, till 100 pounds are paid.

And the testator continues with the same views and same thoughts operating on his mind, and with the same intention:

"And, further, my said executors shall pay unto my grandson, John Moore, 100 pounds, like lawful money, as soon as he arrives to be of 21 years of age;" which would have been on the 21st of July 1832.

Did he design his daughter's children to go pennyless, if their mother or their father chanced to die before the time assigned for the payment of all or any portion of their legacies? and if not, is not the same design manifested in the same words in his bounty to the plaintiff?

The rule of law is, that where the payment of a legacy is postponed, by reason of the supposed inability of the estate to pay, it is vested. See 1 *Rop. on Leg.* 436. So where a design is indicated by the testator that he intended to divide his estate between the devisees and legatees in a particular way, the legacies are vested. 1 *Rop.* 441; 1 *Bro. C. C.* 123. This intent is perfectly plain throughout the will.

Besides, in the conclusion of the first part of the will, he directs that all the afore mentioned sums of money shall be paid " unto the said legatees, or their heirs."

By the supplemental part of the will, he makes the legacies a present lien upon all his lands, though he had directed them to be paid out of the proceeds of his personal estate; and that lien is not

IX.—2 K

[Moore v. Smith.]

to be released or discharged but by payment. The receipts of the legatees " or their heirs," for the payment of all the legacies, is alone contemplated by the testator, as releasing the land.

By the death of a legatee, if the legacy be lapsed, the devisees alone would be benefitted. This was clearly not the purpose of the testator. Lord Eldon says he would struggle against the construction that the legacy is not vested. 6 *Ves*. 541. The bequest is not to be defeated but upon the clear intention of the testator. 11 *Vez*. 497.

There is no residuary bequest—no provision for any lapse; the event was not contemplated.

There is a present bequest by implication, in all the cases, to all the legatees, to be paid in future, all the different times being fixed. None of them in terms, are payable on any contingency—no *if*— or *in case*—or *provided*. The amount is contemplated as falling due, and the time of payment is only postponed, or provided for. There is no uncertain event—no contingency, that might or might not happen. And this, in the books, is said to indicate that the legacy is vested. 1 *Roper* 381. If the legacy was made a present lien, it must be considered a present debt. If the debt is present, and payment only postponed, judgment should be rendered in favour of plaintiffs.

Interest is a matter of course, if the legacy was vested, from the time it was payable. Dawes *v*. Levan, 4 *Mass. Rep*. 218.

All the other legacies in the will, we think, are clearly vested by necessary implication, from a consideration of their situation and circumstances. It would be cruelty to their offspring to decide otherwise. If that is fixed, then a legacy in the same will, out of the same fund, to an infant grand-child, and in the very same words, and under the same circumstances, cannot be lapsed.

We ask that judgment be reversed, and entered for the plaintiff, for the sum stipulated in the special verdict, and with interest from the 1st of July 1832.

*Watts*, for defendant in error.

When the age of the legatee is annexed to the gift, and not to the time of payment and the legatee dies before the happening of the event, the bequest is contingent and lapses. 1 *Roper on Leg*. 383; 2 *Sim. & Stuart* 490. This case is directly in point; it was a legacy " to A as soon as she attains twenty-one, with interest;" and it was held to be contingent, and lapsed upon the death of the legatee before the time arrived. See also 2 *Salk*. 415; 1 *Eq. Cas. Ab*. 295; *Peake* 6; 3 *Pr. Wms*. 20; 2 *Wms. on Ex'rs* 776.

It does not appear to have been the intention of the testator that the legacy to John Moore should be paid at all events, for the language of the bequest to him is different from that of any other bequest to his children; the legacies to all the others are undoubtedly vested, as the time is annexed to the payment and not to the gift.

[Moore v. Smith.]

The testator devises to his sons, John and Michael, his real es-
tate, and charges it with the payment of the legacies, and the claim
now made, if recoverable, will be out of the real estate devised, as
is found by the special verdict.

When a legacy is charged upon land, the construction of the be-
quest will be the more readily made in favour of the inheritance.
There is nothing, therefore, in the argument that there is no re-
siduary clause which provides for the case of a lapsed legacy. The
testator knew, that, if John Moore died before twenty-one, it
would be in relief of his own sons, to whom he devised his land, he
having given to his other children all he intended they should have.
2 *Williams on Ex'rs* 779.

The circumstance that the testator, by the last clause of his will,
directed all the legacies to be paid " on the 1st day of May in each
and every year before mentioned," &c., cannot give any additional
claim to the plaintiff, because it is not certainly applicable to the
clause giving the legacy to John Moore, but to the other legacies,
payable in the different years mentioned, and because he had fixed
other circumstances and another time under and when his legacy
was to be paid. And the same remarks are applicable to the inter-
pretation of the codicil: it operated upon the vested legacies to his
children, and not upon the legacy in question. But even if it did, it
would not operate to give a different character to the legacy. If
the legacy was contingent, and would lapse in case of the death of
the legatee, the fact that the testator secured its payment, in the
event that it should be payable at all, would not seem to change
the character of the bequest. And inasmuch as the words "the
receipts of the legatees and their heirs," &c., are certainly applica-
ble to the vested legacies, there is no reason that there should be
given to them the strained interpretation of applying them, to give
a character to a bequest not intended to be embraced.

The opinion of the court was delivered by

GIBSON, C. J.—The ruling principle of a case like this is, that
where there is no separate and antecedent gift which is indepen-
dent of the direction and time for payment, the legacy is contingent;
and it seems to be as well founded in reason, as rules of interpreta-
tion usually are. Where a gift is only implied from a direction to
pay, it is necessarily inseparable from the direction, and must par-
take of its quality; insomuch that if the one is future and contin-
gent, so must the other be. The implication of the one is an ac-
cessory of the other, and it consequently follows the nature of its
principal; whence it results that there can be no separate and in-
dependent legacy which is not given in express terms. The bequest,
in this instance, is destitute of any expression separately indicative
of an intent to give. " And further," says the testator, " my exe-
cutors shall pay unto my grandson, John Moore, 100 pounds like
money, as soon as he arrives to be twenty-one years of age;" from

[*Moore v. Smith.*]

which, though it is not directly expressed, it must be inferred that a gift was intended, but subject to the contingency that the donee be living at the day of payment to receive it. There is no case exactly in point as to circumstances; but, in Balsford *v.* Kebbel, 3 *Ves.* 363, the principle is asserted in so many words. A testatrix, who bequeathed the produce of certain bank annuities betwixt her death and the arrival of the legatee at the age of thirty-two, directed her executors to transfer the annuities to him at that period; and it was held that the dividends were a distinct subject of bequest, and that there was no gift of the annuities but in the direction to pay, which attached itself to his person only at a particular age; consequently that the bequest of the annuities was contingent. In Mackel *v.* Winter, *Ibid.* 543, it was said that the distinction betwixt even prospective payment and a present gift, however signified, is an arbitrary one, unfounded in any legitimate principle of interpretation, and destitute of any peculiar claim to respect; and that, though it has been followed as to legacies, it has never been extended to real estate. It was borrowed, however, from the ecclesiastical courts, for purposes of convenience if not of necessity. It is a guide to certainty of result, where it is necessary, to choose betwixt suppositious intents in cases where it is nearly certain that there was no intent at all; and it, therefore, frustrates the testator's purpose as seldom as any other which could be employed. But the general rule, that the legacy shall be deemed vested or contingent just as the time shall appear to have been annexed to the gift or the payment of it, as well as the particular rule of interpretation to determine whether it was annexed to the one or the other, is established beyond controversy; and by an application of them to the case in hand, we find that the legacy was not vested in the legatee's minority.

Judgment affirmed.