## Estate of D. K. Ramey, Deceased.

Argued October 25, 1932. Before Trexler,
P. J., Keller, Gawthrop, Cunningham, Stadtfeld
and Parker, JJ. 

*George G. Patterson,* and with him *William G. White,* for appellant.

*T. J. Purdy,* and with him *G. B. Reimensnyder* and *J. F. Meck,* for appellees.

Opinion by Cunningham, J., January 25, 1933:

In October, 1928, W. L. Nicholson, the surviving trustee under the will of D. K. Ramey, filed in the

orphans' court of Blair County the eighteenth and partial account of the management of testator's residuary estate for the year April 10, 1927-1928, including therein a schedule of distribution of a balance of net income amounting to $8,369.21. Katherine R. White, one of decedent's daughters, filed exceptions which gave rise to the present controversy and resulted in this appeal by her from the decree of the court below dismissing them.

Under the schedule, six living children of testator, and the estates of three who had died, were each awarded one-tenth of the fund, or $836.92; the remaining tenth was divided equally between Katherine R. White and the estate of Edgar R. Wingard, her son by a former marriage. The broad question raised by the exceptions is whether the estate of Edgar R. Wingard is entitled to any part of the fund; its disposition involves the construction of the will of D. K. Ramey.

In construing the fourteenth paragraph thereof, in which he named and made provision for his grandson, Edgar R. Wingard, regard must be had to testator's attitude toward his children and grandchildren and to the general plan of distribution of his estate as disclosed in his will. From the record, including the depositions, we gather that testator, who died March 20, 1904, having executed his will on February 26th of that year, was possessed of a considerable estate, both real and personal, located in Blair and other central Pennsylvania counties. He left to survive him his widow, ten children, and several grandchildren. Edgar R. Wingard, when a very young child, was brought to the home of testator and lived there until he was six or seven years of age. Upon the marriage of his mother to Gaton W. White, Edgar lived with them until he went to college at Selinsgrove. At the time of the making of his grandfather's will, Edgar

was preparing for the ministry; whether he became a minister does not appear, but the record discloses that he died, testate, July 31, 1927, leaving a widow, Margaret P. Wingard, but no children; she is the executrix of his will and the distributee, as such, of a one-twentieth share of the fund.

The plan adopted by testator for the administration and final distribution of his real and personal estate contemplated two distinct periods of time and his personal representatives were appointed in the dual capacity of executors and trustees—their duties as trustees to begin at the termination of their services as executors. After providing for his wife and making a number of bequests to charities, matters with which we are not now concerned, testator declared in the fifth paragraph of his will: "I intend that all of my children shall share alike in the remainder of my estate." By this paragraph he then bequeathed to each of his ten children, including his "daughter, Catharine, wife of Gaton W. White" a legacy of $20,-000, "less [their respective] advancements." His executors were empowered to manage and, if necessary, sell, his real estate in order "to enable them to meet the payments and to comply with the provisions" of the will.

The line of demarcation in the duties of his personal representatives was thus indicated in the beginning of the eighth paragraph: "After the foregoing debts, bequests and shares have been paid, then my executors shall settle up and file their final account and pay over to my trustees all moneys remaining in their hands ...... and all other property belonging in and to my estate, and then my trustees shall at once proceed to assume the entire control and management of my estate," etc. Directions with respect to the division of the net profits of the residuary estate between the widow and heirs followed; the trustees were given

"full power to lease, rent or sell ...... such part or parts of [the] real estate as they may deem best" and "to make deeds and conveyances in fee simple for the same, without application to any court." The ultimate disposition directed by testator contemplated the sale, after the death of his widow, of all his estate, real, personal and mixed, and the division of the remainder left after payment of all just claims "equally among [his] lawful heirs living at that time."

After these provisions (and others having no bearing upon the question here involved), testator continued with the following direction relative to the division of Katharine's share in his residuary estate.

"Fourteenth: I further direct that after my executors and trustees shall have paid (including advancements) to my daughter Catharine, wife of Gaton W. White, the said legacy of twenty thousand dollars ($20,000), that instead of her receiving a full and equal share with my other legatees from my residuary estate, the said share shall be equally divided into two parts; the one-half to be paid to my daughter Catharine, wife of Gaton W. White, in the same manner as the shares of my other children are paid, which come out of my residuary estate, the other one-half shall, under the direction and at the discretion of my executors and trustees, be paid to Edgar R. Wingard, son of my daughter Catharine, by a former marriage, and my grandson; my executors and trustees shall keep the same invested if possible in order to increase the amount, thus enabling my said grandson, Edgar R. Wingard, to finish his education for the ministry, for which he is now studying; my executors and trustees, however, may in their judgment, pay out such portions from time to time as the necessities of the said Edgar R. Wingard may demand, if they deem it best."

During the administration of the residuary estate, and more than twenty years after the death of testator,

a controversy arose over the distribution of funds derived by the trustees from the sale of certain real estate. By that time, two sons and one daughter had died and the question was whether the estates of these deceased children were entitled to participate in the distribution of the proceeds of the sale, particularly in view of the above quoted direction that division should be made equally "among [his] lawful heirs living at that time." The trustees applied to the orphans' court of Blair County, in which our colleague, BALDRIGE, J., then presided, for a construction of the will to guide them in making distribution of the funds then in their hands. All parties in interest, including Edgar R. Wingard and his mother, were before the court. After full hearing, decrees were made, on October 30, and November 14, 1924, directing, inter alia, that the estates of the three deceased children should each receive a one-tenth interest in the fund. In view of the language of the fourteenth paragraph, it was decreed, with respect to the share of Katherine White, that "instead of her receiving a full and equal share with the other legatees from the testator's residuary estate, said share [should] be equally divided into two parts, one-half to be paid to the said Katherine White, and the remaining half to be paid to Edgar R. Wingard, under the direction and at the discretion of the trustees and executors."

In the opinion supporting the decrees, it was held, (citing Long's Estate, 228 Pa. 594, 598; Walker's Estate, 277 Pa. 444, 449; McFillin's Estate, 235 Pa. 175, and Packer's Estate, 246 Pa. 116), that the direction to sell worked a conversion of the real estate, and when the will is construed as a whole it is clear that the testator intended that each child living at the time of his death should take a vested interest in his estate, although the time appointed for the distribu-

tion of the respective shares was postponed. None of the parties in interest appealed from these decrees.

It is stated in the opinion of PATTERSON, P. J., supporting his decree, under date of December 15, 1931, dismissing appellant's exceptions to the present schedule of distribution that all the parties were satisfied with the adjudication made in 1924 and that the trustees have paid out, in accordance therewith, more than $200,000. The natural inference seems to be that appellant, by reason of the death of her son, has concluded that she should receive the full one-tenth part of all balances accruing for distribution since his death, and that his widow should be excluded from any participation in the Ramey estate. Counsel for appellant lay stress upon the declared intention of testator that all of his children should "share alike" and argue that the provision made in the fourteenth paragraph for his grandson amounted, at most, to the creation of a trust for his maintenance and education, under the terms of which the trustees were to keep one-twentieth of the net revenues, accruing from time to time, invested and pay over to him, at their discretion, the income from the fund and such "portions" of the principal as they might deem proper. They then contend that testator did not intend this trust to continue beyond the lifetime of his grandson and that upon Edgar's death his mother became entitled to whatever then remained of the corpus of the fund, and thereafter to a full one-tenth share of testator's residuary estate.

Upon a careful consideration of the will as a whole, we are not convinced that appellant's counsel have correctly interpreted testator's intention. None of the numerous authorities cited is controlling here. Mr. Justice SHARSWOOD remarked long ago (Provenchere's Appeal, 67 Pa. 463, 466) that "no two wills are in all respects alike" and "that the intention of the testator of each will separately is to be gathered from its own

four corners." We think, as did the court below, that it was the considered and deliberate intention of testator to qualify, in the case of his daughter Katherine, his declared policy of equality among his children. She was to have her legacy of $20,000 on the same basis as her brothers and sisters but the one-tenth share in the residuary estate, which otherwise would have gone solely to her, was to be equally divided between her and her son. In this connection, the following language of FERGUSON, J., speaking for the orphans' court of Philadelphia County in an opinion adopted by the Supreme Court, (White's Estate, 132 Pa. 17, 21), is applicable: "Why the testator made this change is immaterial. That he fully intended to make it is very evident from the fact that this [fourteenth] clause was written in the will. It does not mention any other subject, and relates to none of his other children or to any other part or share of his estate, and could not possibly have been inserted without the testator having in his mind some clear and well-defined purpose, and what that purpose was is evident from the words of this clause. If it is repugnant or inconsistent with any previous portion of the will, the other portion must give way, and this be regarded as the testator's last will and testament."

Nor is there anything indefinite about the language used; it is that "the other one-half shall ...... be paid to Edgar R. Wingard." We think this language clearly shows that it was the intention of the testator to vest absolutely in his grandson a one-twentieth interest in his residuary estate. Edgar was then in his minority and either attending college or teaching, (the depositions are not clear about this), and the detailed instructions to the trustees would be natural in either case. As we interpret the will, the direction to keep Edgar's share of net revenues invested, "in order to increase the amount" thereof, was merely a recom-

mendation to be carried out by the trustees "if possible," and payments, either from income or principal, were left to the discretion of the trustees, both as to time and amount; none of these instructions affected the quantum of the estate which vested in Edgar at the death of testator. There is not the slightest indication in the paragraph of any intention to make a gift over, at Edgar's death, to any one. The only reference in the will to gifts over of possible remainders is the eleventh paragraph, but it does not help appellant in her present contention. The paragraph reads: "If any of my children should die before the final settlement of my estate, leaving no heirs, then after their decease, their share or so much of it as shall remain at the time of their death, shall revert back to my estate and be divided as other money of my estate." Regardless of the interpretation which should be placed upon the word "children," the fund now for distribution is to be considered as personalty and it cannot be said that Edgar died "leaving no heirs": Eby's Appeal, 84 Pa. 241.

The weight of the argument for appellant, that testator intended to exclude surviving husbands or wives of his lineal descendants from participation in any part of his estate, is minimized by the fact that when he made his will each of his seven daughters, and at least one of his sons, was married and he must have known that in the natural course of events surviving spouses would share in his bounty, unless he expressly directed otherwise.

Counsel for the Wingard estate contend, and the court below held, that the questions now raised in behalf of appellant are res judicata by virtue of the decrees entered by the court below in 1924. Counsel for appellant reply that the present issues could not have been raised prior to the death of Edgar R. Wingard and that by reason of that event there are

facts and issues here which were not considered, and could not have been adjudicated, in the former proceeding. As we have disposed of appellant's contentions upon their merits, this debatable question need not be discussed. For the reasons stated, we find ourselves unable to sustain any of the assignments of error.

The appeal is dismissed and the decree of December 15, 1931, affirmed at the costs of appellant.

BALDRIGE, J., did not participate in the decision of this case.