## Lloyd's Estate.

Argued April 21, 1937. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Joseph Neff Ewing,* with him *R. M. Remick,* of *Saul, Ewing, Remick & Saul,* for appellant.

*John Russell, Jr.,* with him *Bevan A. Pennypacker* and *Morgan, Lewis & Bockius,* for appellees.

Opinion by Mr. Justice Schaffer, May 17, 1937:

We are called upon by the appeal in this proceeding to construe a clause in the will of William M. Lloyd and in doing so to determine whether his son, John E. Lloyd, took a vested estate under it.

The clause in question passed all the testator's estate to a trustee in trust to "pay over the net income thereof unto my beloved wife, Ruth Ann Lloyd, for and during the term of her natural life, . . . and at and after the decease of my said wife, then in trust to be equally divided between my children and the issue of any de-

ceased child as they respectively arrive at the age of twenty-one years, share and share alike, absolutely and in fee, but so, however, that the issue of any such deceased child shall stand in the place of and only take the same share which said decedent would have taken, if living, the income of said respective shares to be paid to said children, or grandchildren, if any, during their respective minorities."

The testator was survived by his widow and two children, John E. Lloyd and William M. Lloyd, Jr. The son, John E. Lloyd, died, having attained the age of twenty-one, during the lifetime of the widow, never having had any issue. The son, William, is living and of age.

John E. Lloyd assigned his interest in the estate to certain banking institutions as collateral security for loans made to him. After the death of the life tenant, at the audit of the father's estate, these banking institutions made claim to one-half of the net estate on the ground that John had a vested interest under his father's will. The son, William, claimed that, as a result of the death of John before the death of his mother, the entire estate vested in him, William. The orphans' court awarded one-half of the fund for distribution to the banking institutions, sustaining their position that John's share was vested. From this determination William M. Lloyd, Jr., appeals.

Appellant bases his contention upon the proposition that there was no specific devise of John's share, that the bequest is to be implied only from the direction to divide after the death of his mother and as John did not survive her and left no issue his interest never vested. To sustain this contention appellant relies largely upon what is said in Smith on Executory Interests Sec. 314: "Where there is no gift but in a direction to pay or transfer or divide among several persons, at a future period; though the future period is annexed to the payment, possession, or enjoyment, yet it is also annexed to the devise or bequest itself. For, in this

case, the direction to pay or transfer or divide constitutes the devise or bequest itself; and, therefore, the vesting in interest is postponed, and not merely the vesting in possession or enjoyment." Appellant cited in support of the rule *Rosengarten v. Ashton,* 228 Pa. 389, 77 A. 562; *Evans's Est.* (No. 1), 264 Pa. 357, 107 A. 731; *Alburger's Est.* (No. 2), 274 Pa. 15, 117 A. 452; *Scott's Est.,* 301 Pa. 509, 152 A. 560, and other cases.

As was said by Judge GEST of the Orphans' Court of Philadelphia, whose learning in that branch of the law with which he dealt was second to none, in *Buckman's Est.,* 13 D. & C. 653, 655, "It will, however, readily be perceived from a consideration of the context and of the cases cited by Mr. Smith that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like. . . . The above remark of Mr. Smith does not seem to be intended as a general canon of construction. And why should it be? What substantial difference is there between a devise after life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided among them." As long ago as *McClure's Appeal,* 72 Pa. 414, we pointed out (p. 418): "Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question." Here there can be no question that the gift was postponed to enable the widow to enjoy the income from the estate during her life. It should be noted that there is no provision in the will for the disposition of John's interest in the event he died without issue during the life of his mother. This was pointed out in *Carstensen's Est.,* 196 Pa. 325,

335, 46 A. 495, where we said: "There is no provision made in the will for the disposition of the interest of any brother or sister who might die prior to the death of the life tenant without leaving a child or children. In such an event, there is no divestiture of the title acquired by the general bequest."

In *Alburger's Est.* (No. 2), 274 Pa. 15, 19, 117 A. 452, the present Chief Justice speaking for the court said: "Where a particular estate is created and the ulterior estate is disposed of by an event which determines the prior estate, the words describing such event as 'upon the decease of my said widow' will ordinarily be construed as referring to the period of determination or enjoyment of the prior gift or estate, and not to the vesting of the estate that follows."

*Jennings's Est.*, 266 Pa. 60, 109 A. 544, is almost the counterpart of the one in hand. There the testator devised his residuary estate to his wife for life "and at her death I direct that the same be divided between my three children share and share alike, and in the event of the death of any of said children leaving a child or children, such child or children to take the share of their parent." The testator's wife and three children survived him. One child, Catharine, died in the lifetime of the mother intestate, unmarried and without issue. On the widow's death, the orphans' court awarded the deceased daughter's share to her personal representative. On appeal we said (p. 62): "The daughter, Catharine, was in esse at her father's death; he fixed her mother's death as the time when she was to come into possession of her share in his estate; the bequest was not qualified, but absolute; no precedent condition was attached to it, and the time fixed for the enjoyment of it was not expressly or by implication annexed to the gift. The interest clearly vested at testator's death." What was said in *Edelman's Est.*, 276 Pa. 503, 507, 120 A. 457, can be very appropriately said of the will before us: "Here, it seems clear that it was not the intention of

the testatrix that her son, daughter, or grand-children should have shares of the estate only if they survived the husband. If she so intended there would have been a direction that the residuary estate should be divided among them if they survived the husband, otherwise to substitutionaries."

Other cases which are precedents for holding that the interest here involved is a vested one are *Marshall's Est.*, 262 Pa. 145, 105 A. 63; *Groninger's Est.*, 268 Pa. 184, 110 A. 465; *Murphey's Est.*, 276 Pa. 498, 120 A. 455; *Weir's Est.*, 307 Pa. 461, 161 A. 730. *Rosengarten v. Ashton*, 228 Pa. 389, 77 A. 562, has been very much limited in its application by our later decisions. In *Alburger's Est.*, (No. 2), 274 Pa. 15, 117 A. 452, the direction to divide was "among my surviving brothers and sisters" and in *Evans's Est.*, 264 Pa. 357, 107 A. 731, the decision turned on the words "then living." *Scott's Est.*, 301 Pa. 509, 152 A. 560, involved in construction a number of contingencies.

The determination of the court below that John took a vested interest is consonant with our decisions.

Decree affirmed at appellant's cost.