## Krug Estate

*James P. Gilliland,* for exceptant.
*Lemuel B. Schofield,* contra.

LEFEVER, J., November 6, 1953.—The issue before the court is whether the "pay and divide" rule is applicable in this case.

Testatrix died on April 6, 1934, leaving a will wherein she devised premises 1745 Wylie Street, Philadelphia, to her trustees, in trust, for the purpose of maintaining a home for her unmarried brothers and sister "as long as any of them shall remain unmarried and desire to live in the home". She provided further that, "upon the marriage or death of the said cestui que trustent the said trustees shall sell and divide the purchase money among all of my brothers and sister and their heirs in equal shares". She concluded her will:

"Sixth. It is my intention to provide a home for my unmarried brothers aforesaid until they are all married and then to give all my brothers and sisters an equal share in fee simple in order that I may carry out the trust imposed upon me orally by my mother, when she devised said property known as and situate at No. 1745 Wylie Street to me, to provide a home for my sister, ANNA, and my unmarried brothers until they marry."

Testatrix bequeathed all of her personal property to her sister, Anna, and her unmarried brothers "in equal shares absolutely". She devised and bequeathed the residue of her estate "unto my brothers and sister share and share alike absolutely".

Testatrix was survived by seven brothers and sisters, all of whom have since died but Robert A. Krug. The last unmarried brother was John T. Krug, who died on November 19, 1952, leaving a will wherein he gave his entire estate to his brother, Robert A. Krug, and the latter's wife, Kathryn Krug. Upon the death of John T. Krug, the trust terminated. Robert A. Krug

was appointed substituted trustee. As such, he sold 1745 Wylie Street, and the proceeds thereof are before the court for distribution.

Robert A. Krug claims the entire fund on the theory that the "pay and divide" rule applies; that, therefore, the gifts were contingent; that the gifts did not vest until the marriage of all life tenants (which did not occur), or the death of the last life tenant (which occurred with John Krug's death on November 19, 1952); and that the fund goes to the survivor, John T. Krug, and thence through the latter's will to claimant. The auditing judge ruled that the gifts were vested as of the date of testatrix's death, and awarded the fund equally among Robert A. Krug and the estates of the six deceased brothers and sisters.

The entire will shows testatrix's intention to benefit her brothers and sister(s). In paragraph sixth, quoted supra, testatrix states her clear intention to make a gift of the trust corpus "to all my brothers and sisters an equal share in fee simple". The enjoyment of the gift was postponed, however, to permit testatrix's unmarried brothers and sister to have a home so long as they lived and remained unmarried. Testatrix indicated no intention that the survivor of her brothers and sisters was to take the entire trust corpus.

Canons of legal construction must yield to the intention of testatrix where it can be ascertained. The "pay and divide" rule is applied only where the intent of testatrix is not clearly expressed: Groninger's Estate, 268 Pa. 184; Edmunds Estate, 374 Pa. 22. In the latter case, Mr. Justice Bell, in a concurring opinion, stated at page 25:

"The 'Pay and Divide' Rule . . . is merely a rule or canon of construction—a means to an end. The end is the intent of the testator which is the pole star of every will: Britt Estate, 369 Pa. 450, 454, 80 A. 2d 243. . . . When the intention of the testator can be

ascertained by an examination of his entire will from the vantage seat of the testator's armchair '. . . technical rules or canons of construction are unnecessary; it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to'."

In discussing cases wherein the words "transfer", "pay" and "divide" were sometimes interpreted to mean a contingent gift and at other times a vested gift, the Supreme Court stated in Newlin Estate, 367 Pa. 527, 536:

"These cases [Thompson Trust, 363 Pa. 85, Lloyd's Estate, 326 Pa. 230, Allen Estate, 347 Pa. 364, and others] illustrate how difficult, if not impossible, it is to harmonize or reconcile the myriad will cases which fall on one or the other side of the vested-contingent line, and especially is this so in the so-called 'pay and divide' cases which create so many technical and perplexing problems."

In view of the difficulties involved in the application of the "pay and divide" rule, we will not resort to it unless absolutely necessary. Here testatrix's clear intention governs.

Moreoever, ". . . it is necessary to keep in mind the rule 'that an interest is to be construed contingent only when it is impossible to construe it as vested': Rau's Estate, 254 Pa. 464, 98 Atl. 1068; that the intention to create a contingent interest 'should appear plainly, manifestly and indisputably': McCauley's Estate, 257 Pa. 377, 101 Atl. 827. . . . In Marshall's Estate, supra, it is said: 'The law leans to vested rather than to contingent estates; and the presumption is that a legacy is vested . . .': Weir's Estate, 307 Pa. 461, 468 and 469. Furthermore, '. . . precedents in will cases are generally of little value, because few wills have a twin brother . . .' ": Newlin Estate, 367 Pa. 527, 536.

Applying these principles, the learned auditing judge rightly concluded:

"The law favors vesting and the clear intention of paragraph sixth is to give fee simple to *all* 'brothers and sisters' and to postpone enjoyment so long as single state of unmarried ones continues."

Consequently, the fund was properly distributable among the seven brothers and sisters (or the estates of those who were deceased).

Accordingly, the exceptions are dismissed, and the adjudication is confirmed absolutely.