Bald Estate.

Argued March 14, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Alexander Black* and *John G. Buchanan,* with them *Robert E. Mertz, Frank W. Ittel, Smith, Buchanan, Ingersoll, Rodewald & Eckert,* and *Reed, Smith, Shaw & McClay,* for appellants.

*James M. Houston,* with him *Adie Allen Stevens, II,* and *Rose, Rose & Houston;* also *Stephen C. Thayer* and *Baker, Hostetler & Patterson,* of the Cleveland Bar, and *Raymond V. Haun* and *Macfarlane, Schaefer & Haun,* of the Los Angeles Bar, for appellees.

*J. T. Conner,* for appellee.

OPINION BY MR. JUSTICE BELL, May 1, 1956:

We adopt the following excerpts from the very able opinion of the Auditing Judge, President Judge BOYLE:

"The question presented in the audit of the two accounts now before the Court is whether the will of the testator bequeathed to the residuary remaindermen an interest which vested at the death of the testator or an interest contingent upon their surviving the testator's aunt, Kate Bald, the life tenant of the residuary estate. . . .

"The testator died on June 23, 1951, aged 38 years. In his will he first bequeathed a number of legacies to named persons and then disposed of his residuary estate, including property over which he had a power of appointment, in the following language:

'FIVE: All the rest, residue and remainder of my property, real and personal, and wherever situate, including any property over which I may at the time of my death have power of appointment, and any prop-

178

erty held in trust at my death in which I have a vested interest,

'A. In the event that my aunt Kate Bald survives me, I give, devise and bequeath to Fidelity Trust Company, in Trust, for the following uses and purposes: The Trustee shall collect the income of the property held hereunder and, after deducting therefrom any charges and expenses properly chargeable to income in the administration of the Trust, shall pay the net income quarterly to my Aunt Kate Bald. Upon the death of my aunt Kate Bald, the Trustee shall divide the principal of the Trust Estate into seven (7) equal shares. One of said shares shall be transferred, delivered and paid over to each of the following persons and institutions: My cousin Edward Seeley; my cousin Elbert Long Seeley; my cousin Edward Cannon Bald; my Aunt Lena Bald Harnett; Trustees of the Carnegie Library of Pittsburgh; the Trustees of Harvard University for the use of the Harvard College Library; and the Trustees of Harvard University for the use of said University. . . .

'B. In the event that my aunt Kate Bald should predecease me, I give, devise and bequeath the said rest, residue and remainder hereinabove described in equal shares to the following persons and institutions: My cousin Edward Seeley; my cousin Elbert Long Seeley; my cousin Edward Cannon Bald; my aunt Lena Bald Harnett; Trustees of the Carnegie Library of Pittsburgh; the Trustees of Harvard University for the use of the Harvard College Library; and Trustees of Harvard University for the use of said University.'

"All remaindermen survived the testator, but two of them, Lena Bald Harnett and Elbert Long Seeley, predeceased the life tenant. It is their shares in the residuary estate which are now in dispute.

"The testator was the only child of Joan Seeley Bald and Edward C. Bald, Sr., both of whom predeceased him. At the time of his death, the testator was unmarried and without issue. He was survived by the two octogenarian aunts named as legatees and by a third aunt, Pauline Seeley Mudge, who owned a considerable estate and is not a legatee under the will. In addition, ten first cousins, the children of deceased uncles and aunts, survived the testator. These relatives would have shared in his estate had he died intestate. The testator was closest to his aunt Kate Bald; she visited at the Bald home in Pittsburgh on her trips between her summer home in New York and her winter home in Florida. His aunt Lena Bald Harnett, a childless widow who resided in California, visited the Bald home on her few trips east; she corresponded with the Balds regularly but not frequently. The testator's cousin, Edward Cannon Bald, had been named for Edward C. Bald, Sr. His cousin, Edward Seeley, had been close to the testator's parents, and the other cousin-legatee, Elbert Long Seeley, had frequent contact with the Bald family until he left Pittsburgh.

"The testator was a shy, retiring person who had few friends and few interests other than music. . . .

. . .

"The testator acquired his estate through inheritances. . . .

. . .

"After the death of Kate Bald on January 21, 1953, the Fidelity Trust Company, as trustee under the testator's will, filed a First and Partial Account. The balance then distributable to the remaindermen was awarded to those who had survived the life tenant and to the administrators of Lena Bald Harnett and of Elbert Long Seeley (who had died October 9, 1952, and

August 31, 1951, respectively). At the audit of the account the question whether the remaindermen's interests were vested or contingent was not raised. Subsequently, on June 8, 1954, a petition was filed by the President and Fellows of Harvard College, one of the remaindermen, to open, review and amend the decree of distribution entered in that accounting and asserting that the interests of the remaindermen were contingent upon their surviving Kate Bald, the life tenant under paragraph 'Five A' of the testator's will.

"The question now before us is identical: whether the remainders to Lena Bald Harnett and to Elbert Long Seeley were contingent upon their survival of Kate Bald, the life tenant of the residuary estate bequeathed by paragraph 'Five A' of the will of Edward C. Bald, Jr. . . ."

Entirely apart from any technical rules or canons of construction, it is apparent from paragraph Five (A) (1) that the testator gave and intended to give absolutely to each of his three named cousins and his named aunt one-seventh of his residuary estate, after the death of his Aunt Kate; (2) that no contingency was attached to these gifts; (3) that the gift was not to a class but to named *living* individuals; and (4) that there was no gift over in the event of their death or otherwise. The testator's aforesaid intention is confirmed by the fact that in paragraph Five (B) he gave his residuary estate absolutely, in the event that his Aunt Kate predeceased him, in equal shares to the *same named* persons and the same named institutions as in paragraph Five (A); and he likewise made an unqualified absolute gift of a pecuniary legacy to each of said named persons and named institutions in a prior paragraph of his will.

Before further analyzing Bald's will it may be wise to state the pertinent principles which are applicable.

In *Dunlap Estate,* 381 Pa. 328, 331, 112 A. 2d 349, the Court said: "The pole star which the Courts seek to ascertain in every will is the testator's intent . . . 'When the intention of the testator can be ascertained by an examination of his entire will . . . "technical rules or canons of construction are unnecessary . . ." ' ": Edmunds Estate, 374 Pa. 26, 97 A. 2d 75".

" ' ". . . it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to: Haydon's Estate, 334 Pa. 403, 6 A. 2d 581; Snyder Estate, 359 Pa. 138, 58 A. 2d 178; Walker's Estate, 344 Pa. 576, 26 A. 2d 456": Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243.' ": *McFadden Estate,* 381 Pa. 464, 112 A. 2d 148.

Appellants contend that paragraph Five (B) of the will supports their construction, namely, that the gift in paragraph Five (A) to each of the named cousins was intended to take effect—although the testator did not say so—only if each survived Aunt Kate, and particularly so because of the so-called "Pay and Divide" Rule. Appellees, on the other hand, contend (1) that paragraph Five (A) of the Will clearly and specifically gave the shares to each of the named cousins and aunt upon Aunt Kate's death, and (2) that this interpretation is confirmed by paragraph Five (B) where there was an *absolute* gift (without any prior estate) to the *same named* cousins and aunt, in the event that Aunt Kate predeceased testator and (3) that if resort must be had to canons of construction, their interpretation of the will must prevail because an estate will be held to be contingent only if it is impossible to hold it vested.

In *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819, a gift, after the death of testator's son (and the son's widow), to issue as a class when the issue thereof arrive at the age of 30 years, "at which time the corpus of said fund

shall be *divided** among them, share and share alike"—
was held to be vested. The Court said (page 534):
"Moreover, if it is not clear from the language of the
will whether the remainder is vested or contingent,
then as Mr. Justice LINN said in Weir's Estate, 307 Pa.
461, 468, 469, 161 A. 730, 'it is necessary to keep in
mind the rule "that an interest is to be construed con-
tingent only when it is impossible to construe it as
vested": Rau's Est., 254 Pa. 464, 98 Atl. 1068; that
the intention to create a contingent interest "should
appear plainly, manifestly and indisputably": Mc-
Cauley's Est., 257 Pa. 377, 101 Atl. 827 . . . In Mar-
shall's Est., supra, it is said: "The law leans to vested
rather than to contingent estates, and the presumption
is that a legacy is vested: Carstensen's Est., 196 Pa. 325
[46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl.
520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est.
[supra], . . ." ' ".

It is obvious that (a) an intention to create a con-
tingent interest does not appear plainly, manifestly and
indisputably and (b) it is not impossible to construe
as vested the testator's gift or provision for his named
living cousins and aunt. If, therefore, resort be had
to canons of construction, the aforesaid canons sup-
port the appellees' interpretation of the will.

Furthermore, there are very many analogous cases
which likewise support appellees' contention that the
named living remaindermen took a vested estate. See
inter alia: *Brumbach Est.,* 373 Pa. 302, 95 A. 2d 514;
*Riverside Trust Co. v. Twitchell,* 342 Pa. 558, 20 A.
2d 768; *Lloyd's Est.,* 326 Pa. 230, 192 A. 98; *Overbrook
Heights B. & L. Ass'n. v. Wilson,* 333 Pa. 449, 5 A.
2d 529; *Groninger's Estate,* 268 Pa. 184, 110 A. 465;
*Jennings's Est.,* 266 Pa. 60, 109 A. 544; *McClure's Ap-*

---

* Italics, ours.

*peal,* 72 Pa. 414; *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819 (and cases cited therein).

In *Brumbach Estate,* 373 Pa., supra, testator left his estate in trust for his daughter for life and after her decease to pay the income to her husband for life, and upon the death of the survivor of them, to pay the balance of the fund to named persons, "the issue of a deceased son to take the same share his parent would have taken if living". We held that this created a vested interest in the issue. The following language from the Court's opinion is equally applicable to the instant will: ". . . we note that there was no condition or limitation upon it; no contingency of survivorship was attached thereto; no alternative or substitutionary gift was made if the son's issue failed to survive the life tenants. The absence of any such provision in connection with an absolute gift, is a significant and important fact which strongly indicates an intention to make a vested rather than a contingent gift: Renner Estate, 358 Pa. 409, 57 A. 2d 836; Packer's Estate, No. 2, 246 Pa. 116, 92 A. 70: Brown's Estate, 289 Pa. 101, 137 A. 132; Barker's Appeal, 72 Pa. 421; Estate of Ramey, 108 Pa. Superior Ct. 156, 163 A. 922; Robert's Appeal, 59 Pa. 70."

Appellants rely mainly if not entirely on the (so-called) "Pay and Divide" Rule.* The rule is easy to state, but so difficult to apply that it is absolutely impossible to harmonize or reconcile the two conflicting lines of cases to which it has been applied. In order to illustrate this difficulty we shall refer to several of the many cases on each side of the line. The leading cases which have applied the general rule, as distinguished from its exceptions, are: *Moore v. Smith,* 9

---

* It would be more accurate to call it the "Divide and Pay" Rule.

Watts 403; *Alburger's Estate (No. 2)*, 274 Pa. 15, 20, 117 A. 452, and *Wilson Estate*, 369 Pa. 583, 87 A. 2d 648. In *Wilson Estate*, 369 Pa., supra, testator provided that the principal upon the death of several life tenants "shall be divided equally among my next of kin." The question involved was whether the gift in remainder to testatrix's next of kin referred to those who were such at the time of testatrix's death or at the death of the last life tenant. The Court held that the next of kin should be ascertained as of the death of the last life tenant. The Court said (page 586): "Such a direction is a 'pay and divide' provision and constitutes a contingent, and not a vested, remainder in the next of kin. The foundation for this legal principle may be found in Moore v. Smith, 9 Watts 403, ... p. 407 ... See also Alburger's Est. (No. 2), 274 Pa. 15, 117 A. 452 ... The application of the principle of the 'pay and divide' cases has presented many difficulties due to varying language, in context, in numerous wills construed. Note observations of two former Chief Justices* of this Court: Rickenbach Estate, 348 Pa. 121, 125, 34 A. 2d 527. See also Mr. Justice BELL'S comments in Newlin Estate, 367 Pa. 527, 536, 80 A. 2d 819. In the case now before us the language is free from all doubt that their remainder is contingent. The direction to divide was in futuro; *there was no post-*

---

* See comments of Chief Justice KEPHART in *Alburger's Est. (No. 2)*, 274 Pa. 15, 18, 19, 117 A. 452; of Chief Justice SCHAFFER in *Hood's Estate*, 323 Pa. 253, 259, 186 A. 740 and *Lloyd's Estate*, 326 Pa. 230, 233, 192 A. 98; of Chief Justice MAXEY in *Overbrook Heights B. & L. Assn. v. Wilson*, 333 Pa. 449, 455, 5 A. 2d 529; of Chief Justice DREW in *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 566, 20 A. 2d 768; of Justice STEARNE in *Rickenbach Estate*, 348 Pa. 121, 125, 34 A. 2d 527; of Justice BELL in *Edmunds Estate*, 374 Pa. 22, 26, 27, 97 A. 2d 75; and of Judge GEST in *Buckman's Estate*, 13 D. & C. 653, 655.

*ponement for convenience or to let in other interests.** Cf. Riverside Trust Co. v. Twitchell, 342 Pa. 558, 20 A. 2d 768; Rickenbach's Estate, supra."

In *Alburger's Estate (No. 2)*, 274 Pa., supra, testator gave his residuary estate, in trust, to pay over the net income to his wife for her life and upon her decease "to divide the principal of my residuary estate to and among my *surviving* brothers and sisters and the issue of such of my brothers and sisters as may be deceased . . . ." This was clearly a contingent gift to the brothers and sisters and the Court so held. However, the Court said (page 20) : "There was no direct or express gift to the brothers and sisters, and it only arose from the direction to pay and divide. It was early held that where the gift is implied from this direction, it is contingent *unless,* under the peculiar circumstances of the devise or *from the whole will, a contrary intention appears, or the devise is postponed to let in some other interests*: McClure's App., 72 Pa. 414, 417. (See, detailed, the controlling principles in Groninger's Est., 268 Pa. 184, as to vested estates.)"

In *Groninger's Estate,* 268 Pa., supra, a will giving a life estate to testator's wife and "at her death the estate shall be divided equally between my children *if any living,* if none to my nearest heirs . . ." was held to give two surviving children a *vested* remainder. The Court, speaking through Justice (later Chief Justice) Von Moschzisker, said (p. 190) : "However, in Man's Est., 160 Pa. 609, 612, 613 (cited in Rosengarten v. Ashton), where the bequest was to 'divide' the principal at the death of the life tenant, we held remainders thus created to be vested, saying: 'where there is a bequest in the form of a direction to pay, or pay and divide, "from and after" the happening of any event,'

---

* Italics throughout, ours.

without more, the remainder is usually accounted contingent: 'but *if, upon the whole will,* it appears that the future gift is only *postponed to let in some other interest, or,* as the court has commonly expressed it, *for the greater convenience of the estate* . . ., the interest is vested notwithstanding, although the enjoyment is postponed.' Again, in a most recent case upon the subject, Jenning's Est., 266 Pa. 60, where (as here) the remainders rest upon a direction to 'divide' testator's estate between his children upon the death of their mother, we held the interests of the children to be vested remainders, citing Marshall's Est., 262 Pa. 145, 149.

"The last mentioned case so plainly states the limitations upon the rule referred to in Rosengarten v. Ashton, that all should now appreciate it is not invariably applicable whenever a direction for distribution happens to be associated with the creation of a remainder; but, since a number of recent appeals indicate misapprehension upon this point, we deem it wise to repeat the following relevant matter from the opinion of Chief Justice Brown in Marshall's Est. (p. 149) : 'Though there be no other gift than in the direction to pay or distribute in futuro, *yet if such a gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question.* Thus where stock is bequeathed to A. for life, and after his decease to trustees, upon trust to sell and . . . divide the proceeds . . . between C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator: 1 Jarm. on Wills, 764. Where the enjoyment of the gift over is postponed to accom-

modate the estate, or for the payment of debts, or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting: 2 Redf. on Wills, 236, section 37.' "

In *Riverside Tr. Co. v. Twitchell*, 342 Pa. 558, 20 A. 2d 768, this Court, speaking through Justice (later Chief Justice) DREW, said: "It is argued by defendant that when testator provided 'to pay the net income thereof (a) to my wife during her life, and (b) upon her death to my daughter [defendant]', he evidenced his intention to give her merely a contingent interest, on the theory that where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality, insomuch that if the one is future and contingent, so must the other be . . . Furthermore, in discussing the proposition upon which the defendant here relies, this Court, speaking through its present Chief Justice [WILLIAM I. SCHAFFER] said, in Lloyd's Estate, 326 Pa. 230, 233: 'As was said by Judge GEST of the Orphans' Court of Philadelphia, whose learning in that branch of the law with which he dealt was second to none, in Buckman's Est., 13 D. & C. 653, 655, "It will, however, readily be perceived from a consideration of the context and of the cases cited by [Smith on Executory Interests] that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like . . . The above remark of Mr. Smith does not seem to be intended as a general canon of construction. And why should it be? *What substantial difference is there between a devise after life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided*

*among them."* As long ago as *McClure's Appeal*, 72 Pa. 414,* we pointed out (p. 418) : "Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question." ' In the present case there is no question that the gift of the life estate to the defendant, Katharine Gorgas Twitchell, was merely postponed to enable testator's widow to enjoy the income from the estate during her life."

In *Overbrook Heights B. & L. Assn. v. Wilson,* 333 Pa. 449, 454, 455-456, 5 A. 2d 529, the Court again quoted with approval the aforesaid quotation from Judge GEST and likewise cited and quoted with approval *McClure's Appeal,* 72 Pa., supra. The Court, speaking through Justice (later Chief Justice) MAXEY, said: "The interest clearly vested at testator's death. We so held on a similar state of facts in Lloyd's Estate, 326 Pa. 230, 192 A. 98. There the clause in question passed all the testator's estate to a trustee in trust to 'pay over the net income thereof unto my beloved wife . . ., for and during the term of her natural life, . . . and at and after the decease of said wife, then in trust to be *equally divided* between my children and the issue of any deceased child as they respectively arrive at the age of twenty-one years, . . .'. Testator's son John died [without issue] after having attained the age of twenty-one, during the lifetime of testator's

---

* In *McClure's Appeal,* which has been cited or quoted with approval 45 times by this Court, testator devised his estate to his wife for life and "at my wife's decease, my real estate to be sold and equally divided amongst my [named] nephews and nieces". The Court held that the named nephews and nieces took a vested interest in the remainder.

widow. . . . The orphans' court . . . [held] that John's share had vested. Upon appeal, this decree was affirmed."

To summarize, (1) Bald's meaning and intent is clear from an examination of his entire will and particularly from paragraph Five (A) and (B), namely, he gave and intended to give (after the death of Aunt Kate) a one-seventh equal share to each named cousin and a named aunt; (2) he intended each named cousin and his named aunt to take a vested interest; and (3) the general principle of the "Pay and Divide" Rule is inapplicable.

Decree affirmed; costs to be paid by appellants.