## Shultz Estate

*Edward H. Miller*, for accountant.
*James R. Koller*, for exceptant.
*H. Rank Bickel, Jr.*, for residuary legatees.

GATES, P. J., March 16, 1965.—Laura Laudermilch Shultz died November 21, 1961, having previously made a will dated November 12, 1958, with codicils thereto dated June 17, 1960, and August 15, 1961. By her will, John B. Laudermilch and Marion L. Smith were designated as executors, and it is to be noted the executors are also two of the residuary legatees.

On September 11, 1963, John Wenner, a residuary legatee, died prior to the actual distribution of the estate. The dispositive issue posed in this matter is whether his residuary share under the estate of Laura Laudermilch Shultz should be distributed to his estate, or to the remaining and surviving residuary legatees named in Mrs. Shultz's will. This depends upon a construction by us of paragraph 12 of decedent's will.

Paragraph 12 provides as follows:

"12. All the rest, residue and remainder of my estate, real, personal and mixed, I direct shall be divided into seven (7) equal shares, and I give, devise and bequeath, in fee simple, absolutely, one of said shares to each of the following nieces and nephews:

"William Wenner,

"John Wenner,

"Richard Wenner,

"Dorothy Laudermilch,

"Marion L. Smith,

"John B. Laudermilch.

"The remaining share, I give and bequeath, in fee simple, absolutely, in equal one-half shares to:

"Mary Margaret Bryant,

"Alfred Bryant.

"If, at the time of this distribution, any of said legatees should be deceased leaving issue, such issue to take the share their ancestor would have taken if living, per stirpes.

"If, at said time, any of said legatees should be deceased leaving no issue, then the share of such deceased

person shall fall into the residue and be distributed among the remaining residuary legatees as above provided".

For legal purposes, John Wenner died without issue surviving. The auditor resolved the dispute in favor of the surviving residuary legatees, and the estate of John Wenner is the exceptant to the auditor's report.

Every will is, in a sense, unique, and, therefore, precedents are of little value: Kirkpatrick's Estate, 280 Pa. 306. The fundamental question here is, what did decedent mean when she used the expression, "If, at the time of this distribution . . ."?

The question must be answered in light of what we find to be her intention, since testatrix' intent is the polestar in the construction of her will: Mulert Estate, 360 Pa. 356. This intention must be gleaned from a consideration of the whole will, and it must include the codicils: Boyer Estate, 372 Pa. 553. Contrary to the argument of the residuary legatees, this testamentary language is ambiguous and does present a problem of construction. In resolving the ambiguity, we must resort to established rules of construction. One of these rules is that an interest is to be construed as a contingent one only when it is impossible to construe it as a vested interest: Bald Estate, 385 Pa. 176; Renner Estate, 358 Pa. 409. So, if it is not clear from the language of the will whether the remainder is vested or contingent, it is necessary to be mindful of the rule that an interest is to be construed as contingent only when it is impossible to construe it as vested, for the law leans to vested rather than contingent estates, and the presumption is that a legacy is vested: Weir's Estate, 307 Pa. 461; Rau's Estate, 254 Pa. 464; McCauley's Estate, 257 Pa. 377; Carstensen's Estate, 196 Pa. 325.

Here, decedent's will, speaking at her death, purported to give a one-seventh share in her residuary

estate to John Wenner ". . . in fee simple, absolutely". Thereafter follows the disputed language: ". . . If, at the time of this distribution. . . ." Did the employment of this language by decedent clearly reveal an intent on her part that the vesting of the interest of John Wenner should be postponed and contingent upon his surviving at an indeterminate time in the future, at which time actual distribution of the legacy would take place? We think not. Rather, we are of the opinion that ". . . this distribution . . ." refers to her division of the residuary estate into seven equal shares, and not to the physical distribution of the assets by the executors at a time subsequent to her death. We do not construe the expression ". . . at the time of this distribution . . ." to be the equivalent of a specified time for payment of the legacy. Rather, we are of the opinion that testatrix intended an immediate and absolute legacy only. This construction is consonant with other specific devises made in her will. It is buttressed by the provisions made for the same legatee in the codicil dated June 17, 1960, wherein she gave John Wenner $1,000 absolutely, ". . . if he is living at the time of my death". In this paragraph, she continues as follows: "This bequest is in addition to the bequest of residue made to the said John Wenner in the Will to which this is a Codicil".

We believe the outcome of this case is controlled by Wengerd's Estate, 143 Pa. 615, for the facts and circumstances are quite similar. In that case, the language of the will was much stronger than that in the will under consideration. Decedent said, in point, at page 620, ". . . and in case of the death of any of the children of my son David, *before the payment to them of their said share,* then to be divided between the survivors". (Italics supplied.)

One of the grandsons survived testator and died 11 months thereafter, but before the legacy was paid in

full. The court nonetheless construed the language as creating a vested gift upon the death of decedent, and refused to consider the language as a condition precedent. The court noted that to do so would give the executors the power to defeat the rights of the legatee by delaying distribution. The court noted: "Actual receipt may be delayed by so many different causes that the court is unwilling to impute to the testator an intention to make that a condition of the legacy, and thus indefinitely postpone the absolute vesting of it". The court quoted the language of Lord Thurlow in Hutchin v. Mannington, 1 Ves. Jr. 366, as follows:

"I am to compute what time would be sufficient to enable these parties to receive their legacies. It is all too uncertain. Suppose we have given real estate in the manner you specify. It is clear that it will neither depend on the caprice of the trustee to sell, for that would be contrary to all common sense, nor upon his dilatoriness. In some way, it may be sold immediately; but I should not inquire when a real estate might have been sold with all possible diligence, for it might be the very next day, or that very evening, and therefore the Court always in such a case, considers it as sold the moment the testator is dead, for, where there is a trust, that is always considered here as done which it is ordered to be done, and the court cannot measure the time. In this case, it is an immeasurable purpose; I can do nothing with it, and it must be considered as vested from the death of the testator".

We shall do as Lord Thurlow suggested. We shall not determine and justify the delay in distributing this estate. Exceptants' decedent died nearly two years after the death of Mrs. Shultz. The account was filed two and one-half years after her death. We shall not consider and evaluate the proffered excuses for this long delay. We do not believe that decedent intended the gift to depend upon his surviving, whatever delays

were encountered. Rather, we are of the opinion that she intended that it be vested upon her death.

The residuary legatees here take false comfort in Dinkey Estate, 403 Pa. 179, for the facts are totally dissimilar. In that case, decedent created a trust of his residuary estate to pay the income to his wife for her life and upon her death to his children. However, the will added the following language:

"In Case of the death of any of my children prior to the distribution of the trust estate herein provided. . . ."

It is abundantly clear that testator in Dinkey Estate intended to give one-third of the principal of his trust estate to each of his children who survived his widow and to the surviving children, per stirpes, of each child who predeceased his widow, and, if any child died prior to the distribution of the trust estate without surviving issue, his share was to be divided equally among testator's surviving children or grandchildren, and not to pass to strangers of his blood. The language there clearly created a vested interest in the children subject to being divested if the condition, to wit, failing to survive the widow, existed. The language used in the will in Dinkey Estate needed no construction. It was clear. Not so is the instant case. This language needs clarification, and we have done so.

Therefore, after due and careful consideration, we will make the following

### ORDER

And now, to wit, March 16, 1965, the exceptions are sustained, so far as they are in accordance with the foregoing opinion, and the decree of distribution is amended, and the balance in the hands of the accountant, in the amount of $34,337.60, shall be awarded as follows: William Wenner, 4,905.37; Dorothy Laudermilch, 4,905.37; Marion L. Smith, 4,905.37; John B. Laudermilch, 4,905.37; Kathryn Wenner Allen, 4,-

905.37; William F. Wenner, Executor of Estate of John Wenner, deceased, 4,905.37; Mary Margaret Bryant, 2,452.69; Alfred Bryant, 2,452.69.

Each party shall bear his own costs.